## MULLER, PLAINTIFF IN ERROR, v. THE STATE OF OREGON.

### ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 107. Argued January 15, 1908.—Decided February 24, 1908.

The peculiar value of a written constitution is that it places, in unchanging form, limitations upon legislative action, questions relating to which are not settled by even a consensus of public opinion; but when the extent of one of those limitations is affected by a question of fact which is debatable and debated, a widespread and long continued belief concerning that fact is worthy of consideration.

This court takes judicial cognizance of all matters of general knowledge—such as the fact that woman's physical structure and the performance of maternal functions place her at a disadvantage which justifies a difference in legislation in regard to some of the burdens which rest upon her.

As healthy mothers are essential to vigorous offspring, the physical well-being of woman is an object of public interest. The regulation of her hours of labor falls within the police power of the State, and a statute directed exclusively to such regulation does not conflict with the due process or equal protection clauses of the Fourteenth Amendment.

The right of a State to regulate the working hours of women rests on the police power and the right to preserve the health of the women of the State, and is not affected by other laws of the State granting or denying to women the same rights as to contract and the elective franchise as are enjoyed by men.

While the general liberty to contract in regard to one's business and the sale of one's labor is protected by the Fourteenth Amendment that liberty is subject to proper restrictions under the police power of the State.

The statute of Oregon of 1903 providing that no female shall work in certain establishments more than ten hours a day is not unconstitutional so far as respects laundries.

48 Oregon, 252, affirmed.

THE facts, which involve the constitutionality of the statute

of Oregon limiting the hours of employment of women, are stated in the opinion.

*Mr. William D. Fenton,* with whom *Mr. Henry H. Gilfry* was on the brief, for plaintiff in error:

Women, within the meaning of both the state and Federal constitutions, are persons and citizens, and as such are entitled to all the privileges and immunities therein provided, and are as competent to contract with reference to their labor as are men. *In re Leach,* 134 Indiana, 665; *Minor* v. *Happerset,* 21 Wall. 163; *Lochner* v. *New York,* 198 U. S. 45; *First National Bank* v. *Leonard,* 36 Oregon, 390; II. B. & C. Ann. Codes & Statutes of Oregon, §§ 5244, 5250.

The right to labor or employ labor and to make contracts in respect thereto upon such terms as may be agreed upon, is both a liberty and a property right, included in the constitutional guarantee that no person shall be deprived of life, liberty or property without due process of law. Cooley's Const. Lim. (7th ed.), 889; *Ex parte Kuback,* 85 California, 274; *Seattle* v. *Smyth,* 22 Washington, 327; *Low* v. *Printing Co.,* 41 Nebraska, 127, 146; *Richie* v. *People,* 155 Illinois, 98, 104; *Cleveland* v. *Construction Co.,* 67 Ohio St. 197, 213, 219; *Frorer* v. *People,* 141 Illinois, 171, 181; *Coal Co.* v. *People,* 147 Illinois, 67, 71; *State* v. *Goodwill,* 33 W. Va. 179, 183; *State* v. *Loomis,* 115 Missouri, 307, 316; *In re Morgan,* 26 Colorado, 415; *Lochner* v. *New York,* 198 U. S. 45, 53; *State* v. *Buchanan,* 29 Washington, 603; *State* v. *Muller,* 48 Oregon, 252.

The law operates unequally and unjustly, and does not affect equally and impartially all persons similarly situated, and is therefore class legislation. Cases cited *supra* and *Bailey* v. *The People,* 190 Illinois, 28; *Gulf, Colo. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150; *Barbier* v. *Connolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703; *Ex parte Northrup,* 41 Oregon, 489, 493; *In re Morgan,* 26 Colorado, 415; *In re House Bill 203,* 21 Colorado, 27; *In re Eight Hour Bill,* 21 Colorado, 29.

Section 3 of this act is unconstitutional in this, that it de-

prives the plaintiff in error and his employés of the right to contract and be contracted with, and deprives them of the right of private judgment in matters of individual concern, and in a matter in no wise affecting the general welfare, health and morals of the persons immediately concerned, or of the general public. Cases cited *supra* and *In re Jacobs*, 98 N. Y. 98; *People* v. *Gillson*, 109 N. Y. 389; *Godcharles* v. *Wigeman*, 113 Pa. St. 431, 437; *Ramsey* v. *People*, 142 Illinois, 380.

Conceding that the right to contract is subject to certain limitations growing out of the duty which the individual owes to society, the public, or to government, the power of the legislature to limit such right must rest upon some reasonable basis, and cannot be arbitrarily exercised. *Ritchie* v. *People*, 155 Illinois, 98, 106; *State* v. *Loomis*, 115 Missouri, 307; *Ex parte Kuback*, 85 California, 274; *City of Cleveland* v. *Construction Co.*, 67 Ohio St. 197, 218; *State* v. *Goodwill*, 33 W. Va. 179, 182; *Lochner* v. *New York*, 198 U. S. 48, 57.

The police power, no matter how broad and extensive, is limited and controlled by the provisions of organic law. *In re Jacobs*, 98 N. Y. 98, 108; *People* v. *Gillson*, 109 N. Y. 389; *Civil Rights Cases*, 109 U. S. 11; *Mugler* v. *Kansas*, 123 U. S. 661; Tiedeman on Lim. of Police Powers, §§ 3–86.

Women, equally with men, are endowed with the fundamental and inalienable rights of liberty and property, and these rights cannot be impaired or destroyed by legislative action under the pretense of exercising the police power of the State. Difference in sex alone does not justify the destruction or impairment of these rights. Where, under the exercise of the police power, such rights are sought to be restricted, impaired or denied, it must clearly appear that the public health, safety or welfare is involved. This statute is not declared to be a health measure. The employments forbidden and restricted are not in fact or declared to be, dangerous to health or morals. Cases cited *supra* and *Wenham* v. *State*, 65 Nebraska, 395, 405; Tiedeman on Lim. of Police Power, § 86; 1 Tiedeman, State & Fed. Control of Persons and Property, p. 335–337; *Colon* v. *Lisk*,

153 N. Y. 188, 197; *People* v. *Williams*, 100 N. Y. Supp. 337; *People* v. *Williams*, 101 N. Y. Supp. 562.

*Mr. H. B. Adams* and *Mr. Louis D. Brandeis* for defendant in error. *Mr. John Manning, Mr. A. M. Crawford,* Attorney General of the State of Oregon, and *Mr. B. E. Haney* were on the brief:

The legal rules applicable to this case are few and are well established, namely:

The right to purchase or to sell labor is a part of the "liberty" protected by the Fourteenth Amendment of the Federal Constitution and this right to "liberty" is, however, subject to such reasonable restraint of action as the State may impose in the exercise of the police power for the protection of health, safety, morals and the general welfare. *Lochner* v. *New York,* 198 U. S. 45, 53, 67.

The mere assertion that a statute restricting "liberty" relates, though in a remote degree, to the public health, safety or welfare does not render it valid. The act must have a "real or substantial relation to the protection of the public health and the public safety." *Jacobson* v. *Massachusetts,* 197 U. S. 11, 31. It must have "a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate." *Lochner* v. *New York,* 198 U. S. 45, 56, 57, 61.

While such a law will not be sustained if it has no real or substantial relation to public health, safety or welfare, or that it is an unreasonable, unnecessary and arbitrary interference with the right of the individual to his personal liberty or to enter into those contracts in relation to labor which may seem to him appropriate or necessary for the support of himself and his family, if the end which the legislature seeks to accomplish be one to which its power extends, and if the means employed to that end, although not the wisest or best, are yet not plainly and palpably unauthorized by law, then the court cannot interfere. In other words when the validity of a statute is questioned, the burden of proof, so to speak, is

upon those who assail it. *Lochner* v. *New York*, 198 U. S. 45–68.

The validity of the Oregon statute must therefore be sustained unless the court can find that there is no "fair ground, reasonable in and of itself, to say that there is material danger to the public health (or safety), or to the health (or safety) of the employés (or to the general welfare), if the hours of labor are not curtailed. *Lochner* v. *New York*, 198 U. S. 45, 61.

The Oregon statute was obviously enacted for the purpose of protecting the public health, safety, and welfare. Indeed it declares: that as the female employés in the various establishments are not protected from overwork, an emergency is hereby declared to exist.

The facts of common knowledge of which the court may take judicial notice establish, conclusively, that there is reasonable ground for holding that to permit women in Oregon to work in a "mechanical establishment, or factory, or laundry" more than ten hours in one day is dangerous to the public health, safety, morals or welfare. *Holden* v. *Hardy*, 169 U. S. 366; *Jacobson* v. *Massachusetts*, 197 U. S. 11; *Lochner* v. *New York*, 198 U. S. 481.

*Mr. Louis D. Brandeis* also submitted a separate brief in support of the constitutionality of the law.[1]

MR. JUSTICE BREWER delivered the opinion of the court.

On February 19, 1903, the legislature of the State of Oregon passed an act (Session Laws, 1903, p. 148), the first section of which is in these words:

"SEC. 1. That no female (shall) be employed in any mechanical establishment, or factory, or laundry in this State more than ten hours during any one day. The hours of work may be so arranged as to permit the employment of females

[1] For an abstract of this brief, see p. 419, *post*.

at any time so that they shall not work more than ten hours during the twenty-four hours of any one day."

Section 3 made a violation of the provisions of the prior sections a misdemeanor, subject to a fine of not less than $10 nor more than $25. On September 18, 1905, an information was filed in the Circuit Court of the State for the county of Multnomah, charging that the defendant "on the 4th day of September, A. D. 1905, in the county of Multnomah and State of Oregon, then and there being the owner of a laundry, known as the Grand Laundry, in the city of Portland, and the employer of females therein, did then and there unlawfully permit and suffer one Joe Haselbock, he, the said Joe Haselbock, then and there being an overseer, superintendent and agent of said Curt Muller, in the said Grand Laundry, to require a female, to wit, one Mrs. E. Gotcher, to work more than ten hours in said laundry on said 4th day of September, A. D. 1905, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

A trial resulted in a verdict against the defendant, who was sentenced to pay a fine of $10. The Supreme Court of the State affirmed the conviction, *State* v. *Muller*, 48 Oregon, 252, whereupon the case was brought here on writ of error.

The single question is the constitutionality of the statute under which the defendant was convicted so far as it affects the work of a female in a laundry. That it does not conflict with any provisions of the state constitution is settled by the decision of the Supreme Court of the State. The contentions of the defendant, now plaintiff in error, are thus stated in his brief:

"(1) Because the statute attempts to prevent persons, *sui juris*, from making their own contracts, and thus violates the provisions of the Fourteenth Amendment, as follows:

"'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'

" (2) Because the statute does not apply equally to all persons similarly situated, and is class legislation.

" (3) The statute is not a valid exercise of the police power. The kinds of work proscribed are not unlawful, nor are they declared to be immoral or dangerous to the public health; nor can such a law be sustained on the ground that it is designed to protect women on account of their sex. There is no necessary or reasonable connection between the limitation prescribed by the act and the public health, safety or welfare."

It is the law of Oregon that women, whether married or single, have equal contractual and personal rights with men. As said by Chief Justice Wolverton, in *First National Bank* v. *Leonard*, 36 Oregon, 390, 396, after a review of the various statutes of the State upon the subject:

"We may therefore say with perfect confidence that, with these three sections upon the statute book, the wife can deal, not only with her separate property, acquired from whatever source, in the same manner as her husband can with property belonging to him, but that she may make contracts and incur liabilities, and the same may be enforced against her, the same as if she were a *femme sole*. There is now no residuum of civil disability resting upon her which is not recognized as existing against the husband. The current runs steadily and strongly in the direction of the emancipation of the wife, and the policy, as disclosed by all recent legislation upon the subject in this State, is to place her upon the same footing as if she were a *femme sole*, not only with respect to her separate property, but as it affects her right to make binding contracts; and the most natural corollary to the situation is that the remedies for the enforcement of liabilities incurred are made co-extensive and co-equal with such enlarged conditions."

It thus appears that, putting to one side the elective franchise, in the matter of personal and contractual rights they stand on the same plane as the other sex. Their rights in these respects can no more be infringed than the equal rights of their brothers. We held in *Lochner* v. *New York*, 198 U. S. 45, that

a law providing that no laborer shall be required or permitted to work in a bakery more than sixty hours in a week or ten hours in a day was not as to men a legitimate exercise of the police power of the State, but an unreasonable, unnecessary and arbitrary interference with the right and liberty of the individual to contract in relation to his labor, and as such was in conflict with, and void under, the Federal Constitution. That decision is invoked by plaintiff in error as decisive of the question before us. But this assumes that the difference between the sexes does not justify a different rule respecting a restriction of the hours of labor.

In patent cases counsel are apt to open the argument with a discussion of the state of the art. It may not be amiss, in the present case, before examining the constitutional question, to notice the course of legislation as well as expressions of opinion from other than judicial sources. In the brief filed by Mr. Louis D. Brandeis, for the defendant in error, is a very copious collection of all these matters, an epitome of which is found in the margin.[1]

---

[1] The following legislation of the States impose restrictions in some form or another upon the hours of labor that may be required of women: Massachusetts: chap. 221, 1874, Rev. Laws 1902, chap. 106, § 24; Rhode Island: 1885, Acts and Resolves 1902, chap. 994, p. 73; Louisiana: § 4, Act 43, p. 55, Laws of 1886, Rev. Laws 1904, vol. 1, p. 989; Connecticut: 1887, Gen. Stat. revision 1902, § 4691; Maine: chap. 139, 1887, Rev. Stat. 1903, chap. 40, § 48, p. 401; New Hampshire: 1887, Laws 1907, chap. 94, p. 95; Maryland: chap. 455, 1888, Pub. Gen. Laws 1903, art. 100, § 1; Virginia: p. 150, 1889–1890, Code 1904, tit. 51A, chap. 178A, § 3657b; Pennsylvania: No. 26, p. 30, 1897, Laws 1905, No. 226, p. 352; New York: Laws 1899, § 1, chap. 560, p. 752, Laws 1907, chap. 507, § 77, subdiv. 3, p. 1078; Nebraska: 1899, Comp. Stat. 1905, § 7955, p. 1986; Washington: Stat. 1901, chap. 68, § 1, p. 118: Colorado: Acts 1903, chap. 138, § 3, p. 310; New Jersey: 1892, Gen. Stat. 1895, p. 2350, §§ 66, 67; Oklahoma: 1890, Rev. Stat. 1903, chap. 25, art. 58, § 729; North Dakota: 1877, Rev. Code 1905, § 9440; South Dakota: 1877, Rev. Code (Penal Code, § 764), p. 1185; Wisconsin: § 1, chap. 83, Laws of 1867, Code 1898, § 1728; South Carolina: Acts 1907, No. 233, p. 487.

In foreign legislation Mr. Brandeis calls attention to these statutes: Great Britain: Factories Act of 1844, chap. 15, pp. 161, 171; Factory and Workshop Act of 1901, chap. 22, pp. 60, 71; and see 1 Edw. VII, chap. 22. France, 1848; Act Nov. 2, 1892, and March 30, 1900. Switzerland, Canton

While there have been but few decisions bearing directly upon the question, the following sustain the constitutionality of such legislation: *Commonwealth* v. *Hamilton Mfg. Co.*, 120 Massachusetts, 383; *Wenham* v. *State,* 65 Nebraska, 394, 400, 406; *State* v. *Buchanan,* 29 Washington, 602; *Commonwealth* v. *Beatty,* 15 Pa. Sup. Ct. 5, 17; against them is the case of *Ritchie* v. *People,* 155 Illinois, 98.

The legislation and opinions referred to in the margin may not be, technically speaking, authorities, and in them is little or no discussion of the constitutional question presented to us for determination, yet they are significant of a widespread belief that woman's physical structure, and the functions she performs in consequence thereof, justify special legislation restricting or qualifying the conditions under which she should be permitted to toil. Constitutional questions, it is true, are not settled by even a consensus of present public opinion, for it is the peculiar value of a written constitution that it places in unchanging form limitations upon legislative action, and thus gives a permanence and stability to popular government which otherwise would be lacking. At the same time, when a question of fact is debated and debatable, and the extent to

---

of Glarus, 1848; Federal Law 1877, art. 2, § 1. Austria, 1855; Acts 1897, art. 96a, §§ 1–3. Holland, 1889; art. 5, § 1. Italy, June 19, 1902, art. 7. Germany, Laws 1891.

. Then follow extracts from over ninety reports of committees, bureaus of statistics, commissioners of hygiene, inspectors of. factories, both in this country and in Europe, to the effect that long hours of labor are dangerous for women, primarily because of their special physical organization. The matter is discussed in these reports in different aspects, but all agree as to the danger. It would of course take too much space to give these reports in detail. Following them are extracts from similar reports discussing the general benefits of short hours from an economic aspect of the question. In many of these reports individual instances are given tending to support the general conclusion. Perhaps the general scope and character of all these reports may be summed up in what an inspector for Hanover says: "The reasons for the reduction of the working day to ten hours—(a) the physical organization of women, (b) her maternal functions, (c) the rearing and education of the children, (d) the maintenance of the home—are all so important and so far reaching that the need for such reduction need hardly be discussed."

which a special constitutional limitation goes is affected by the truth in respect to that fact, a widespread and long continued belief concerning it is worthy of consideration. We take judicial cognizance of all matters of general knowledge.

It is undoubtedly true, as more than once declared by this court, that the general right to contract in relation to one's business is part of the liberty of the individual, protected by the Fourteenth Amendment to the Federal Constitution; yet it is equally well settled that this liberty is not absolute and extending to all contracts, and that a State may, without conflicting with the provisions of the Fourteenth Amendment, restrict in many respects the individual's power of contract. Without stopping to discuss at length the extent to which a State may act in this respect, we refer to the following cases in which the question has been considered: *Allgeyer* v. *Louisiana*, 165 U. S. 578; *Holden* v. *Hardy*, 169 U. S. 366; *Lochner* v. *New York*, 198 U. S. 45.

That woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsistence is obvious. This is especially true when the burdens of motherhood are upon her. Even when they are not, by abundant testimony of the medical fraternity continuance for a long time on her feet at work, repeating this from day to day, tends to injurious effects upon the body, and as healthy mothers are essential to vigorous offspring, the physical well-being of woman becomes an object of public interest and care in order to preserve the strength and vigor of the race.

Still again, history discloses the fact that woman has always been dependent upon man. He established his control at the outset by superior physical strength, and this control in various forms, with diminishing intensity, has continued to the present. As minors, though not to the same extent, she has been looked upon in the courts as needing especial care, that her rights may be preserved. Education was long denied her, and while now the doors of the school room are opened and her opportunities for acquiring knowledge are great, yet even with that and the

consequent increase of capacity for business affairs it is still true that in the struggle for subsistence she is not an equal competitor with her brother. Though limitations upon personal and contractual rights may be removed by legislation, there is that in her disposition and habits of life which will operate against a full assertion of those rights. She will still be where some legislation to protect her seems necessary to secure a real equality of right. Doubtless there are individual exceptions, and there are many respects in which she has an advantage over him; but looking at it from the viewpoint of the effort to maintain an independent position in life, she is not upon an equality. Differentiated by these matters from the other sex, she is properly placed in a class by herself, and legislation designed for her protection may be sustained, even when like legislation is not necessary for men and could not be sustained. It is impossible to close one's eyes to the fact that she still looks to her brother and depends upon him. Even though all restrictions on political, personal and contractual rights were taken away, and she stood, so far as statutes are concerned, upon an absolutely equal plane with him, it would still be true that she is so constituted that she will rest upon and look to him for protection; that her physical structure and a proper discharge of her maternal functions—having in view not merely her own health, but the well-being of the race— justify legislation to protect her from the greed as well as the passion of man. The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long-continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the capacity to maintain the struggle for subsistence. This difference

justifies a difference in legislation and upholds that which is designed to compensate for some of the burdens which rest upon her.

We have not referred in this discussion to the denial of the elective franchise in the State of Oregon, for while it may disclose a lack of political equality in all things with her brother, that is not of itself decisive. The reason runs deeper, and rests in the inherent difference between the two sexes, and in the different functions in life which they perform.

For these reasons, and without questioning in any respect the decision in *Lochner* v. *New York,* we are of the opinion that it cannot be adjudged that the act in question is in conflict with the Federal Constitution, so far as it respects the work of a female in a laundry, and the judgment of the Supreme Court of Oregon is

*Affirmed.*