(164 App. Div. 795)

PEOPLE ex rel. DEUTERMANN v. DOYLE, Sheriff.

(Supreme Court, Appellate Division, Second Department.   November 27, 1914.)

MASTER AND SERVANT (§ 13*)—POLICE POWER—PUBLIC HEALTH—HOURS OF WORK.

   Labor Law (Consol. Laws, c. 31) art. 6, § 8a, as· added by Laws 1913, c. 740, violation of which is a misdemeanor, under Penal Law (Consol. Laws, c. 40) § 1275, providing that every employer of labor engaged in carrying on any factory or mercantile establishment shall allow every person at least 24 consecutive hours in every seven consecutive days, and that no employer shall operate factory or establishment on Sunday, unless he posts a list of those required or allowed to work Sunday and designates the day of rest for each, even as applied to those enjoying an 8-hour day, has a real and substantial relation to the general welfare, and is a valid exercise of the police power.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

   Burr and Rich, JJ., dissenting.

Appeal from Special Term, Westchester County.

Habeas corpus by the People, etc., on the relation of Charles Deutermann, against William J. Doyle, as Sheriff of the County of Westchester, in the State of New York.   From order ·dismissing the writ, relator appeals.   Affirmed.

Argued before JENKS, P. J., and BURR, CARR, RICH, and PUTNAM, JJ.

Joseph Rowan, of New York City, for appellant.
William J. Fallon, of White Plains, for respondent.

PUTNAM, J.   Accepting the statement of facts contained in the opinion of Mr. Justice BURR, the test of the constitutionality of such statutes, which are aimed to preserve public health, is that it must have "some relation to the general welfare."   Regulations of the Sunday working hours of barbers are constitutional.   People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707; Petit v. Minnesota, 177 U. S. 164, 20 Sup. Ct. 666, 44 L. Ed. 716. Where many persons work together, as in "a factory or mercantile establishment," the statute may require cessation of work during one day in seven.   Judge Vann recognizes that the employed may not have the power to observe this day of rest without legislation, as the intensity of business "rivalry and competition would ultimately prevent, not only the wage earners, but likewise the capitalists and employers themselves, from yielding to the warnings of nature and obeying the instinct of self-preservation by resting periodically from labor."   Peo-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ple v. Havnor, 149 N. Y. 195, 204, 43 N. E. 541, 544 (31 L. R. A. 689, 52 Am. St. Rep. 707).

As this act is only for factories and mercantile establishments where the tendency is to long, steady hours of daily labor, I cannot say that it is an unjustifiable encroachment on individual rights. Even mills running on half time I think should keep this seventh day of rest. The generality of the provision is essential to its practical enforcement with our large industrial plants. If the statute gives this rest only to those who have worked a minimum period—say 48 hours a week—even that limit would become a loophole for its evasion. Can we say that a seventh day of rest is only for the overworked? I think those enjoying an 8-hour day may also demand it for their protection. In four places this act refers to Sunday. It may be called a modified Sunday law protecting against work on that day, or, if work·has to go on then, providing a substituted day of rest so as to save the laborer from consecutive toil beyond six days.

Hence it seems to me that we, as a court, can see in this measure a real and substantial relation to the general welfare.

The order should therefore be affirmed.

JENKS, P. J., and CARR, J., concur.    BURR, J., reads for reversal, with whom RICH, J. concurs.

BURR, J. (dissenting).    On February 26, 1914, Charles Deutermann was arrested and brought before a justice of the peace of the town of Harrison, charged with a misdemeanor in that he had violated section 8a of article 6 of the Labor Law. Consolidated Laws, c. 31 (Laws of 1909, c. 36), as amended Laws of 1913, c. 740; Penal Law, § 1275. In default of bail he was committed to the custody of the sheriff of Westchester county. Claiming that the act in question is contrary to the provisions of subdivision 6 of article 1 of the state Constitution and the fourteenth amendment of the federal Constitution, he sued out a writ of habeas corpus. From an order dismissing the writ and remanding the relator, this appeal is taken.

The act in question provides as follows:

"Every employer of labor engaged in carrying on any factory or mercantile establishment in this state shall allow every person, except those specified in subdivision two, employed in such factory or mercantile establishment at least twenty-four consecutive hours of rest in every seven consecutive days."

The information charges that relator, who is an employer and engaged in carrying on a factory, did on the 15th, 16th, 17th, 18th, 19th, 20th and 21st days of February, 1914, employ as a laborer one Michael Ukrus (not being one of those excepted in subdivision 2 of said act) for a period of at least 8 hours of the consecutive days aforesaid, and did not allow to him 24 consecutive hours of rest in the aforesaid 7 consecutive days.

The only question before us is the validity of· said act. At the threshold of the discussion, we must determine its nature. Following the process of elimination, we conclude, first, that it is not a regulation with reference to the observance of the first day of the week,

commonly called Sunday, although of necessity one of the seven consecutive days upon which relator allowed Ukrus to work must have been Sunday. By an entirely different statute, all work on the first day of the week is prohibited, except work of necessity or charity, and work by persons uniformly observing another day of the week as holy time and not working on that day. Penal Law, §§ 2140, 2143, 2144, and 2146. Primarily sabbath regulations have to do with "serious interruptions of the repose and religious liberty of the community." Penal Law, § 2140. Their purpose is "to secure to the community the privilege of undisturbed worship, and to the day itself that outward respect and observance which may be deemed essential to the peace and good order of society." Lindenmuller v. People, 33 Barb. 548. The Legislature "has the right to regulate its observance as a civil and political institution." People v. Havnor, 149 N. Y. 195, 203, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707; People v. Moses, 140 N. Y. 214, 35 N. E. 499; People v. Dunford, 207 N. Y. 17, 100 N. E. 433. If this were to be deemed a sabbath regulation, the only individuals who could possibly be affected thereby would be those outside of the excepted classes, who were engaged in the works of necessity or charity in a factory or mercantile establishment. The language of the act does not so limit it. We may assume that persons thus employed are not engaged in "works of charity." In the title of the act (Laws of 1913, c. 740) it is declared to be "An act to promote the public health by amending the labor law, in relation to labor of more than six days in any one week." It must therefore be construed to be primarily what its title indicates—an act to regulate the hours of labor. A man's right to labor is his property. If his power to contract freely in respect to the same is impaired, he is so far forth deprived of his property. Unquestionably this may be done in the exercise of what is awkwardly described as the "police power of the state." Generally speaking, this power is "vested in the Legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same." Cooley's Constitutional Limitations (7th Ed.) 830; Commonwealth v. Alger, 7 Cush. (Mass.) 53, 85; Thorpe v. R. & B. R. Co., 27 Vt. 140, 149, 62 Am. Dec. 625. Without attempting definitely to mark the boundaries of this power or prescribe limits to its exercise, let us see to what extent the provisions of this act may be carried, for it is not what has been done, but what can be done or prohibited under the act, which determines its constitutional validity. Curtin v. Benson, 222 U. S. 78, 32 Sup. Ct. 31, 56 L. Ed. 102. We observe, therefore:

First. That in its application the law is general (omitting the exceptions which relate only to four classes of occupation), and it applies, not only to every woman and child permitted to labor in any factory or mercantile establishment in the state, but also to every man as well, no matter what the nature of the employment may be. It is manifest that so broad a prohibition has no relation "to the safety,

health, morals, and general welfare of the public." Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133. In the Lochner Case, which involved the validity of a statute of this state limiting the hours of labor in bakeries or confectioneries to 10 hours in any one day and 60 hours in any one week, in holding such statute unconstitutional, the Supreme Court of the United States said, with regard to the men affected thereby:

"They are in no sense wards of the state. Viewed in the light of a purely labor law, with no reference whatever to the question of health, we think that a law like the one before us involves neither the safety, the morals, nor the welfare of the public, and that the interest of the public is not in the slightest degree affected by such an act. * * * The limitation of the hours of labor does not come within the police power on that ground."

It is true that in the case of women and children a different rule prevails. Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957; Commonwealth v. Riley, 210 Mass. 387, 97 N. E. 367, Ann. Cas. 1912D, 388, affirmed 232 U. S. 671, 34 Sup. Ct. 469, 58 L. Ed. 788.

In Muller v. Oregon, supra, the court said of a statute regulating the hours of the labor of women:

"That woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsistence is obvious. This is especially true when the burdens of motherhood are upon her. Even when they are not, by abundant testimony of the medical fraternity, continuance for a long time on her feet at work, repeating this from day to day, tends to injurious effects upon the body, and, as healthy mothers are essential to vigorous offspring, the physical well-being of woman becomes an object of public interest and care in order to preserve the strength and vigor of the race. * * * Differentiated by these matters from the other sex, she is properly placed in a class by herself, and legislation designed for her protection may be sustained, even when like legislation is not necessary for men and could not be sustained."

In Berdos v. Tremont & Suffolk Mills, 209 Mass. 489, 95 N. E. 876, Ann. Cas. 1912D, 797, in construing an act prohibiting the employment of children under 14 years of age in a mercantile establishment, the court said:

"This statute is a declaration of legislative policy that parents and guardians of children undertaking to act in their own behalf shall no longer be permitted to bargain at all as to the work of children of tender years in specified employments. It relates to a class who are least able to protect themselves by appreciating and avoiding danger, or to request instructions as to matters beyond their understanding, or to arrange by contract for their protection, or to resist any compulsion arising from their own necessities or other circumstances. * * * The statute has to do with the protection of childhood. It pertains to a subject of universal interest fundamentally vital in its broader bearings to the future of mankind."

The act here considered also differs from the statute relating to the hours of employment of persons engaged in underground mines and workings, where the character of the employment was dangerous. Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780. But in that act there was an "emergency clause" excepting from its provisions cases "where life or property is in imminent danger." No such clause is found in the act which we are now considering, and,

no matter how serious and threatening the emergency arising upon the seventh day, the employé must rest and the employer seek service from another source or fail to avert the threatened danger. Violation of the provisions of the statute in this respect to the slightest degree would not be innocent. Commonwealth v. Riley, supra.

Second. The act does not limit the hours of labor either upon any particular day or during any consecutive period of days. Entirely irrespective of the duration of the hours of labor for the preceding six consecutive days, upon the seventh day the proprietor of the factory or mercantile establishment must give to his employé "at least twenty-four consecutive hours of rest," and this irrespective of whether this seventh day falls upon Sunday or upon some other day of the week. If, therefore, the employé has worked but for one hour a day for six consecutive days in an establishment where the labor was of the lightest and least exacting character and under the most favorable sanitary conditions, the laborer cannot sell his labor on the seventh day, nor can the employer purchase the same; and that, too, entirely irrespective of any emergency which may have been existing requiring the immediate performance of some slight act of labor. Doubtless an act might be framed which, taking into account the nature of the occupation and the number of hours of labor performed upon the six preceding consecutive days, should require the granting by the employer of 24 consecutive hours of rest from toil, except possibly in the presence of great emergency, threatening serious danger to life, person, or property, and such legislation be sustained as in harmony with constitutional provisions. This act far exceeds such limitations, and reluctantly we are constrained to hold that it was beyond the power of the Legislature to enact.

The order appealed from must be reversed, the writ sustained, and the relator discharged from custody.