Argued November 14; affirmed December 5, 1933

FRED MEYER, Inc., *v.* KEASEY et al.

(27 P. (2d) 311)

*B. A. Green,* of Portland (I. H. Van Winkle, Attorney General, W. S. Levens, Assistant Attorney General, and Lotus L. Langley, District Attorney, for Multnomah County, and Ben H. Conn, Deputy District Attorney, of Portland, on the brief), for appellants.

*Dan J. Malarkey,* of Portland (Malarkey, Dibble & Herbring, of Portland, on the brief), for respondent.

RAND, C. J. This is a suit in equity to enjoin the defendants, who constitute the State Welfare Commission of Oregon, from enforcing a certain order promulgated by it, upon the ground that the making of this particular order was not within the powers conferred upon the commission by the laws creating it and that, if within such powers, then the order violates both the state and federal constitutions.

The order complained of, in part, reads as follows:

"No person shall employ any woman in the city of Portland in a mercantile establishment, other than cigar stands in hotels and confectionery stores, later than 6:00 o'clock p. m."

The statute creating this commission was chapter 62, General Laws of Oregon for 1913, and, as amended by chapter 35, Laws 1915, appears as sections 49-301 to 49-320, both inclusive, Oregon Code 1930. It was amended by chapter 394, L. 1931, but the amendatory act, in so far as material to the questions involved here, merely changed the name of the commission from that of Industrial Welfare Commission to State Welfare Commission. The title of the 1913 Act reads as follows:

"An Act to protect the lives and health and morals of women and minor workers, and to establish an Industrial Welfare Commission and define its powers

and duties, and to provide for the fixing of minimum wages and maximum hours and standard conditions of labor for such workers, and to provide penalties for violation of this Act.''

It contains a preamble which reads:

''Whereas, The Welfare of the State of Oregon requires that women and minors should be protected from conditions of labor which have a pernicious effect on their health and morals, and inadequate wages and unduly long hours and unsanitary conditions of labor have such a pernicious effect;''.

Section 1 of the act provides that: ''It shall be unlawful to employ women or minors in any occupation within the State of Oregon for unreasonably long hours'', or ''under such surroundings or conditions— sanitary or otherwise— as may be detrimental to their health or morals:'' or ''to employ women * * * for wages which are inadequate to supply the necessary cost of living and to maintain them in health'', or ''Minors * * * for unreasonably low wages''.

Section 4 enumerates the powers of the commission as follows:

''Said commission is hereby authorized and empowered to ascertain and declare, in the manner hereinafter provided, the following things: (a) Standards of hours of employment for women or for minors and what are unreasonably long hours for women or for minors in any occupation within the State of Oregon; (b) Standards of conditions of labor for women or for minors in any occupation within the State of Oregon and what surroundings or conditions—sanitary or otherwise—are detrimental to the health or morals of women or of minors in any such occupation; (c) Standards of minimum wages for women in any occupation within the State of Oregon and what wages are inadequate to supply the necessary cost of living

to any such women workers and to maintain them in good health; and (d) Standards of minimum wages for minors in any occupation within the State of Oregon and what wages are unreasonably low for any such minor workers.''

Section 5 authorizes the commission to investigate the wages and hours and conditions of labor of women and minors, and to inspect the books, payrolls and records of employers bearing upon the questions of wages or hours or conditions of labor of such women or minors, and to require the employers to furnish full and true statements of the wages paid to such workers or minors, and their hours and conditions of labor.

Section 9 of the act was amended by chapter 35, Laws 1915, and as amended it contains, among other things, this provision:

''No such order of said commission shall authorize or permit the employment of any woman for more hours per day or per week than the maximum now fixed by law, provided, however, that in case of emergency which may arise in the conduct of any industry or occupation overtime may be permitted under conditions and rules which the commission, after investigation, shall determine and prescribe by order and which shall apply equally to all employers in such industry or occupation.''

Section 12 of the act directs that the word ''occupation'' as used in the act shall be so construed as to include any and every vocation and pursuit, trade and industry. Under the further provisions of the act, any valid order in the premises duly made and rendered and adopted by said commission is given the full force and effect of law and it is made the duty of all employers in the occupations affected by any such order to observe and comply therewith, and any employer

failing or refusing so to do may be subjected to criminal prosecution and is deemed guilty of a misdemeanor, and, upon conviction thereof, may be fined or imprisoned, or may be punished by both fine and imprisonment in the discretion of the court.

The 1913 act to which we have referred contains no provision fixing the number of hours in which a woman may be employed. The statute containing such a provision is section 49-322, Oregon Code 1930. That section provides:

"No female shall be employed in any manufacturing, mechanical or mercantile establishment, laundry, hotel or restaurant, or telegraph or telephone establishment or office, or by any express or transportation company in this state more than ten hours during any one day, or more than sixty hours in one week. The hours of work may be so arranged as to permit the employment of females at any one time so that they shall not work more than ten hours during the twenty-four hours of one day or sixty hours during any one week. Provided, however, that the provisions of this section in relation to the hours of employment shall not apply to nor affect females employed in harvesting, packing, curing, canning or drying any variety of perishable fruit, vegetable or fish. Provided further, they be paid time and a half for time over ten hours per day when employed in canneries or driers or packing plants. Provided, also, that piece workers shall be paid one and a half the regular prices for all work done during the time they are employed over ten hours per day."

The order in question containing the part quoted above is what is known as the commission's "Order No. 37", and relates only to the employment of women in mercantile establishments in the city of Portland. It was promulgated by the commission on August 12, 1919, and became effective on October 14, 1919, and,

just prior to the commencement of this suit, was attempted to be enforced upon the plaintiff corporation which owns and operates a large number of mercantile establishments in the city of Portland, which remain open and continue business until a later hour than 6 o'clock p. m., and employs both adult men and women as clerks. The record does not show that this order was ever enforced or attempted to be enforced prior to that time. As stated, this suit was brought to restrain its enforcement.

Upon the filing of the complaint, a temporary injunction was issued and defendants demurred to the complaint upon the ground that it failed to state facts sufficient to constitute a cause of suit. The demurrer was overruled and defendants were granted twenty days in which to answer or further plead. At the expiration of that period, defendants in open court stated that they elected to stand upon their demurrer. A decree was then entered, holding that part of the order above quoted to be null and void and permanently enjoining the defendants from enforcing or attempting to enforce the same as against the plaintiff herein, and defendants appealed.

The complaint in part alleges that the plaintiff corporation owns and conducts 19 mercantile establishments and stores in the city of Portland and has established an extensive trade and business in the sale, among other things, of cigars, cigarettes, tobacco and smokers' sundries, generally, as sold in cigar stands within the city, confectionery of all kinds, vegetables, meats, fruits, groceries, canned goods and food stuffs, ice cream and light lunches, dairy products and such articles as usually sold in delicatessens, toilet articles, drugs and medicinal preparations such as are sold in

department and other stores; that it keeps its stores open after the hours of 6 p. m. and employs both adult men and women as clerks. It alleges that the working hours of all women employed by plaintiff after 6 o'clock p. m. are so arranged that no woman employee is permitted or required to work on two successive days, without an interval of nine hours' rest between such days, or for more than six calendar days in one calendar week or for more than six hours of continuous labor, without a rest period of at least forty-five minutes, or for more than nine hours in any one day or for more than forty-eight hours in any one week, and that it has complied with all laws, rules and regulations pertaining to or governing the duration of time women workers may be employed at their tasks.

■ Under the various provisions of the statutes referred to, it is obvious that the State Welfare Commission is a mere creature of the statute, having no independent legislative powers of its own. It may by virtue of the statute exercise such powers and such powers only as are conferred upon it by the legislature. While exercising the powers conferred and in respect to the matters intrusted to it, the orders of the commission are given the effect of law and any violation of them is made a criminal offense. But when acting in excess of the authority and powers conferred then the acts and orders of the commission are null and void because such acts and orders are not done or made under or pursuant to any existing law. When the 1913 act is considered in its entirety, it will be seen from the title as well as from the body of the act that this law was enacted to protect the lives, health and morals of women and minor workers by fixing the minimum wages, maximum hours and standard

conditions of labor under which the work was to be done. The preamble itself recites that the public welfare requires that women and minors should be protected from conditions of labor which have a pernicious effect on their health and morals, and also declares that inadequate wages and unduly long hours and unsanitary conditions of labor have such a pernicious effect. By section 1 of the act it is made unlawful to employ women or minors for unreasonably long hours or under such surroundings or conditions, sanitary or otherwise, as may be detrimental to their health or morals, or to employ women for wages which are inadequate to supply the necessary cost of living and to maintain them in health, or minors for unreasonable low wages. This shows that the legislature intended by the enactment of this law to protect women and minors from being compelled to work for unreasonably long hours or for inadequate wages or under conditions of labor which would have a pernicious effect on their health or morals, and that the commission was established for the purpose of fixing minimum wages, maximum hours and standard conditions of labor which would not be injurious to their lives, health or morals when so employed.

■ There is not one word in the entire statute, nor in any other statute of this state, which shows any intention upon the part of the legislature to prescribe what particular hours during the day the work should be done, or giving the commission the power to prescribe by order that it shall be unlawful for any person to employ any woman in any mercantile establishment in Portland, or elsewhere within the state, at a later period than 6 o'clock p. m., unless section 4 of the 1913 act, which empowers the commission to ascertain and declare, "(a) Standards of hours of employ-

ment for women or for minors and what are unreasonably long hours for women or for minors in any occupation within the State of Oregon;" has that effect. The signification of the words "standards of hours of employment", as used in that statute, must be ascertained from the context and from the objects and purposes which the statute shows the legislature had in mind when enacting the law. When so considered, it seems clear that the legislature intended to empower the commission to fix the maximum hours of labor which could be performed in one day or in one week and not the particular hours of the day during which the work could be done.

■ Defendants contend that, since the act is a remedial statute and is intended to protect women workers from the greed and oppression of their employers, it should be liberally construed to effectuate the objects and purposes of the statute. That it is such a statute and that it should be liberally construed is obvious, but it does not follow from that that its terms should be extended so as to authorize the commission to exercise a power which the legislature did not intend that it should have. As was said by Andrews, C. J., in *Matter of Estate of Prime,* 136 N. Y. 347, 362 (32 N. E. 1091, 18 L. R. A. 713):

"* * * It is the duty of courts in the interpretation of statutes to declare the law as it is, and the interests of society are best subserved by a close adherence by courts to what they find to be the plain meaning, neither narrowing the application on the one hand, nor extending the meaning on the other, to meet cases not specified, which may seem to be within the reason of the law."

Defendants base their argument largely upon the case of *Radice v. New York,* 264 U. S. 292 (44 S.

Ct. 325, 68 L. Ed. 690), which upheld the validity of a statute of New York prohibiting the employment of women in restaurants in cities of the first and second class between the hours of 10 o'clock at night and 6 o'clock in the morning. The validity of that statute was challenged upon the ground that it contravened the provisions of the Fourteenth amendment in that it violated the due process clause by depriving the employer and employee of their liberty of contract and also the equal protection clause by an unreasonable and arbitrary classification. It was contended by the state in that case, as recited in the opinion, "that night work of the kind prohibited so injuriously affects the physical condition of women, and so threatens to impair their peculiar and natural functions, and so exposes them to the dangers and menaces incident to night life in large cities, that a statute prohibiting such work falls within the police power of the state to preserve and promote the public health and welfare". That contention was sustained and the law was upheld against both objections. Upon the first of said objections, the court said:

"The legislature had before it a mass of information from which it concluded that night work is substantially and especially deterimental to the health of women. We cannot say that the conclusion is without warrant. The loss of restful night's sleep cannot be fully made up by sleep in the daytime, especially in busy cities, subject to the disturbances incident to modern life. The injurious consequences were thought by the legislature to bear more heavily against women than men, and, considering their more delicate organism, there would seem to be good reason for so thinking. The fact, assuming it to be such, properly may be made the basis of legislation applicable only to women. Testimony was given upon the trial to the effect that the night work in question was not harmful; but we do

not find it convincing. Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the legislature; and if the question of what the facts establish be a fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker. The state legislature here determined that night employment of the character specified, was sufficiently detrimental to the health and welfare of women engaging in it to justify its suppression; and, since we are unable to say that the finding is clearly unfounded, we are precluded from reviewing the legislative determination. Holden v. Hardy, 169 U. S. 366, 395, 42 L. Ed. 780, 792, 18 S. Ct. 383. The language used by this court in Muller v. Oregon, 208 U. S. 412, 422, 52 L. Ed. 551, 556, 28 S. Ct. 324, 13 Ann. Cas. 957, in respect of the physical limitations of women, is applicable and controlling:

" 'The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long-continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the capacity to maintain the struggle for subsistence. This difference justifies a difference in legislation, and upholds that which is designed to compensate for some of the burdens which rest upon her'."

The distinction between that case and this is obvious. The prohibition was not against the working after 6 o'clock p. m., during the early evening hours, but against the employment of women in restaurants between the hours of 10 o'clock p. m. and 6 o'clock a. m.

In the case at bar the prohibition of the order is against the employment of women in stores after 6 o'clock p. m., and the employment in question only required women to work, as we understand from the arguments of counsel, between 6 o'clock p. m. and 8 or 8:30 p. m. That case and this are not analagous in any respect. The question there was the validity of a state statute, while here the question is the extent of the powers delegated to a commission. This latter question must, of course, be determined by the act under which the commission was constituted and by the powers therein enumerated. The menace to the health and morals of women employed in restaurants in the city of New York between the hours of 10 p. m. and 6 a. m. cannot reasonably be said to exist where women are employed in stores in the city of Portland between 6 and 7 o'clock at night, or even during a later period of the evening.

 Section 49-322 provides that: "The hours of work may be so arranged as to permit the employment of females at any one time so that they shall not work more than 10 hours during the 24 hours of one day or 60 hours during any one week." This clearly contemplates that women may be employed in stores at any hour during the day provided they do "not work more than 10 hours during the 24 hours of one day or 60 hours during any one week". There is nothing in the 1913 act which expressly or impliedly repeals this provision or authorizes the commission to promulgate an order which would have the effect of repealing the provisions of that section. Hence, we conclude that the state welfare commission, in its promulgation of this order, was acting in excess of the authority conferred upon it and, therefore, that the order complained of is null and void.

The question of whether, if the legislature had passed an act containing the particular provisions of

this order or if it had authorized the commission to make such an order, such action upon the part of either would have contravened the due process and the equal protection clauses of the federal constitution, is not here for decision. That question has been ably briefed and argued by both sides, but, since the question is not before us, we refuse to express any opinion or to make any ruling thereon.

For these reasons, the judgment appealed from is affirmed.