Halpern J., concurring: I substantially agree with the majority. I write separately to offer one comment on the majority’s rationale for disallowing petitioner’s deduction for her breast augmentation surgery and to offer additional comments on positions taken in other side opinions. I. Breast Augmentation Surgery I am satisfied with the majority’s decision to disallow a deduction for petitioner’s breast augmentation surgery on the ground that it did not fall within the treatment protocols of the Benjamin standards. Majority op. p. 73. For me, that petitioner failed to prove her doctors adhered to the Benjamin standards requirement that they document her breast-engendered anxiety is sufficient to find that the surgery did not fall within those standards. The majority’s added reason, “the breasts’ apparent normalcy”, majority op. p. 73, I find superfluous and potentially misleading. In particular, the observation of Dr. Meltzer, petitioner’s surgeon, in his pre-surgical note that petitioner’s breasts were of a very nice shape was not an aesthetic judgment but rather a clinical observation relating to the shape of her breasts in comparison to the breasts of other transsexual males on feminizing hormones. Moreover, Dr. Meltzer testified that the surgery was different from the surgery he would perform on a biological female: “[I]t was to give her a female looking breast, which is quite different from a male breast”. In response to a question from the Court, he testified that the primary purpose of the breast surgery was not to improve petitioner’s appearance but “to assign her to the appropriate gender”. His medical notes should not be taken out of context. II. Statutory Interpretation A. Introduction We face a task that is not unusual for us, that is, interpreting the Internal Revenue Code, and we employ a set of tools (canons of construction and the like) that are familiar to both us and the parties. My colleagues raise arguments in support of respondent that he did not make.[1] Because they are not addressed by the majority, I use this opportunity to address some of them. B. Sex Reassignment Surgery, Treatment, and Mitigation For the sake of argument, I accept the distinction Judge Gustafson draws between the words “treat” and “mitigate”. Nevertheless, his argument that sex reassignment surgery only mitigates (and does not treat) GID rests on a subtle misunderstanding of that disease. For Judge Gustafson, petitioner’s disease was the “delusion” that she was a female. Gustafson op. note 9. Judge Gustafson cannot fathom that someone with a healthy male body who believes he is female is not sick of mind. Yet the record suggests that the disease is more than that. A biological male who is convinced he is a woman but does not exhibit clinically significant distress or impaired functioning fails to satisfy at least one precondition set forth in DSM-IV-TR for a diagnosis of GID.[2] Simply put, the “delusion” itself is not the disease. Instead, for someone suffering from severe GID (like petitioner) the medical problem — the disease — is the symptoms. For a significant part of the medical community, sex reassignment surgery is an accepted approach to eliminating a sufficient number of those symptoms so that a diagnosis of GID will no longer hold. And if the diagnosis will no longer hold, then the patient is cured. Petitioner’s expert, George R. Brown, M.D., was of the opinion that sex reassignment surgery does not change the patient’s belief that his or her psychological gender does not match his or her biological sex. Nevertheless, he was of the opinion that, by virtue of petitioner’s hormone therapy and sex reassignment surgery, she was cured of her GID, “which due to the severity and long-standing nature of her condition, would not have been possible without hormones and sex reassignment surgery.” He testified that, by “cured”, he meant that the symptoms of the disorder were no longer present for an extended period. She was cured, he testified, because, when he examined her in March 2007 to prepare his expert testimony, she no longer met the criteria for a diagnosis of GID. For instance, he testified, she had been free for a long time of clinically significant distress or impairment resulting from a misalignment of her body and her psychological sex. Indeed, his explanation comports with a consideration of the diagnostic criteria in dsm-iv-tr (cited by the majority, majority op. p. 36) for GID. In discussing the diagnostic features of GID, dsm-iv-tr states: “To make the diagnosis [of GID], there must be evidence of clinically significant distress or impairment in social, occupational, or other important areas of functioning.” Dr. Brown seems to have concluded that petitioner was cured according to the notion discussed above that a disease is characterized by an identifiable group of signs or symptoms, [3] and when those signs or symptoms, once present, are no longer present in sufficient degree or severity to characterize (diagnose) the disease, the patient is free of the disease; i.e., she is “cured”. Whether in fact petitioner was free of clinically significant distress or impairment (there may have been some disagreement among the doctors)[4] has no effect on the force of Dr. Brown’s argument. If petitioner could be cured, then she could be treated,[5] and, as the majority makes clear, we do not ground decisions as to medical care on the efficacy of the treatment. Majority op. pp. 69-70. Judge Gustafson has failed to convince me that we should understand the verb “to cure” in any but the way Dr. Brown uses it. C. The Intent of Congress Judge Goeke rejects surgery as a treatment for GID because of his contextual reading of the statute: “I believe that the word ‘treat’ in the context of the cosmetic surgery exclusion implies that for expenses for any procedure to be deductible, the procedure must address a physically related malady.” Goeke op. p. 102. Judge Goeke, like Judge Gustafson, however, fails to provide any convincing support for his position. Judge Goeke’s contextual argument relies heavily on his discerning congressional purpose from the report of the Senate Finance Committee discussed by the majority, majority op. note 27, and quoted by Judge Goeke, Goeke op. p. 103. In the light of the report language that he quotes, Judge Goeke argues: “The * * * Senate Finance Committee report indicates that Congress intended to allow deductions only for cosmetic surgery to correct physical maladies resulting from disease or physical disfigurement”. Goeke op. p. 103. I disagree in general with Judge Goeke’s reliance on the report given the unambiguous language of section 213(d)(9), and I disagree in particular with the inference he draws from the report. In Campbell v. Commissioner, 108 T.C. 54, 62-63 (1997), we set forth the well-established and well-understood rules for construing a provision of the Internal Revenue Code: In construing * * * [a provision of the Internal Revenue Code], our task is to give effect to the intent of Congress, and we must begin with the statutory language, which is the most persuasive evidence of the statutory purpose. United States v. American Trucking Associations, Inc., 310 U.S. 534, 542-543 (1940). Ordinarily, the plain meaning of the statutory language is conclusive. United States v. Ron Pair Enters. Inc., 489 U.S. 235, 242 (1989). Where a statute is silent or ambiguous, we may look to legislative history in an effort to ascertain congressional intent. Burlington N. R.R. v. Oklahoma Tax Commn., 481 U.S. 454, 461 (1987); Griswold v United States, 59 F.3d 1571, 1575-1576 (11th Cir. 1995). However, where a statute appears to be clear on its face, we require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein. Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984); see Pallottini v. Commissioner, 90 T.C. 498, 503 (1988), and cases there cited. The word “treat” is found in section 213(d)(9) only in the definition of “cosmetic surgery” in section 213(d)(9)(B).[6] It forms part of the expression “does not * * * prevent or treat illness or disease”, and nothing in the definition indicates that the expression excludes surgical treatments for mental illness or mental disease. The language of section 213(d)(9)(B) is sufficiently plain that, in searching the legislative history of the provision for a contradiction, I would keep firmly in mind the Supreme Court’s injunction in United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989): Ordinarily, the plain meaning of the statutory language is conclusive. I would also keep in mind that, as quoted above, “where a statute appears to be clear on its face, we require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein.” Campbell v. Commissioner, supra at 63. Here there is no such evidence. The paragraph of the Senate Finance Committee report on which Judge Goeke relies does not adequately illuminate subparagraph (B) of section 213(d)(9) because it discusses “disease” only in the context of the amelioration of a “disfiguring disease” in subparagraph (A) of that section.[7] The report does not even mention that, according to the definition of cosmetic surgery, a procedure that prevents or treats illness or disease will not be classified as cosmetic surgery under section 213(d)(9)(B). The Senate Finance Committee report is far from unequivocal evidence of legislative purpose contrary to that to be inferred from the plain language of section 213(d)(9)(B).[8] I would stick with the plain language and read “treat” and “illness or disease” to have their ordinary meanings. D. The Plain Language of the Provision Judge Foley takes both the majority and respondent to task for not adhering to the plain language of section 213(d)(9). The plain language, he argues, compels the conclusion that for surgery directed at improving appearance to escape classification as cosmetic surgery under section 213(d)(9)(B) it must both meaningfully promote the proper function of the body and prevent or treat illness or disease.[9] He further argues that, even if not cosmetic surgery within the meaning of section 213(d)(9)(B), petitioner’s sex reassignment surgery and related procedures (I assume the hormone therapy) may be “other similar procedures” under section 213(d)(9)(A). I believe that Judge Foley is wrong on his first count and that, with respect to his second count, neither the sex reassignment surgery nor the hormone therapy falls within the class of “other similar procedures”. I agree with Judge Foley that section 213(d)(9)(B) sets forth a two-part test: A procedure is cosmetic surgery if it (1) is directed at improving appearance and (2) does not meaningfully promote the proper function of the body or prevent or treat illness or disease. Because the second part of the test contains two expressions separated by “or”, that part of the test contains a “disjunction”; i.e., a compound proposition that is true if one of its elements is true. Importantly, however, the second part of the test contains not just a disjunction (i.e., (p or q)), but rather the negation of a disjunction (i.e., not (p or q)). Judge Foley errs because he assumes that the expression “not (p or q)” is equivalent to the expression “(not p) or (not q)”. Thus, he redefines cosmetic surgery such that: “A procedure 'directed at improving the patient’s appearance’ is cosmetic surgery if it either does not ‘meaningfully promote the proper function of the body’ or does not ‘prevent or treat illness or disease.’” Foley p. 105. Judge Foley simply disregards the rules of grammar and logic in favor of a part of the legislative history that is silent as to the interpretative question he fashions. In formal logic, there is a set of rules, De Morgan’s laws, relating the logical operators “and” and “or” in terms of each other via negation. E.g., http://en.wikipedia.org/wiki/ De_Morgan’s_laws. The rules are: not (p or q) = (not p) and (not q) not (p and q) = (not p) or (not q) The first of the rules would appear to govern the disjunction in section 213(d)(9)(B), which is of the form “not (p or q)”. Its equivalent is of the form “(not p) and (not q)”, which, substituting the relevant words, is: “does not meaningfully promote the proper function of the body and does not prevent or treat illness or disease”. The two-part test of section 213(d)(9)(B) for determining whether a procedure is cosmetic surgery could then equivalently be rewritten: A procedure is cosmetic surgery if it (1) is directed at improving appearance and (2) does not meaningfully promote the proper function of the body and does not prevent or treat illness or disease. The second expression is true only if the procedure neither meaningfully promotes the proper function of the body nor prevents or treats illness or disease. If one of the alternatives is true, however, then the expression is false and the test is flunked, so that the procedure is not cosmetic surgery. That, of course, contradicts Judge Foley’s reading of the statute, but I believe the better view is to presume that Congress is careful in its drafting and drafts in accordance, rather than in conflict, with the rules of grammar and logic. Finally, Judge Foley argues that the “similar procedures” referred to in section 213(d)(9)(A) are delimited only by the exceptions found in that provision and not the exceptions to the definition of cosmetic surgery found in section 213(d)(9)(B).[10] That reading seems wrong: Does Judge Foley suggest that even “similar procedures” that “meaningfully promote the proper function of the body” and “prevent or treat illness or disease” are not deductible “medical care”? That cannot be correct. As I noted earlier, if we infer the word “surgical” before the word “procedure” in the section 213(d)(9)(B) definition of cosmetic surgery, then the term “other similar procedures” in section 213(d)(9)(A) is given meaning. I would argue that “other similar procedures” refers to nonsurgical, appearance-enhancing procedures, such as hormone therapy, the deductibility of which is tested by applying first the exceptions in section 213(d)(9)(B), then those in section 213(d)(9)(A). Petitioner’s sex reassignment surgery is excluded from the class of “other similar procedures” principally because it is surgical. Her hormone therapy is excluded because, as the majority finds, it treats her disease. E. Medical Necessity Without deciding whether section 213(d)(9) requires a showing of medical necessity, the majority nonetheless finds that petitioner’s sex reassignment surgery was medically necessary. Majority op. p. 74. Apparently, the majority is preparing for a perhaps different view of the statute by the Court of Appeals. Judge Holmes’ Brandéis brief[11] exhibits impressive scholarship, discussing much that is outside the record. We are a trial court, however, principally restricted to evidence presented, and arguments made, by the parties. See Snyder v. Commissioner, 93 T.C. 529, 531-535 (1989). On the record before us, and as argued by respondent, the majority’s finding is not clearly erroneous. Clearly the issues before us are important to respondent. His opening brief is 209 pages long, and his answering brief is 72 pages long. Between them, the two briefs show a total of eight attorneys assisting the Chief Counsel, in whose name the briefs are filed. I assume that respondent made all the arguments that he thought persuasive. See discussion of that precondition in the immediately following paragraph. The principal meaning of “disease” in the American Heritage Dictionary of the English Language 517 (4th ed. 2000) is: “A pathological condition of a part, organ, or system of an organism resulting from various causes, such as infection, genetic defect, or environmental stress, and characterized, by an identifiable group of signs or symptoms.” (Emphasis added.) In rebuttal to Dr. Brown, respondent’s expert, Chester W. Schmidt, Jr., M.D., disagreed with Dr. Brown’s use of the word “cure” in connection with petitioner, since she continued to suffer from psychiatric disorders, but he did not dispute that someone who presents no symptoms of a disease would be considered cured of that disease. Judge Gustafson seems to concede that if GID is curable, then it is treatable: “[A]ny procedure that does ‘cure’ a disease necessarily ‘treats’ it.” Gustafson op. note 7. That provision, on its face, is ambiguous only to the extent that, to give meaning to the term “other similar procedures” in sec. 213(d)(9)(A), the word “surgical” probably should be inferred before the word “procedure”. Sec. 213(d)(9)(B) would then read: “Cosmetic surgery defined. — For purposes of this paragraph, the term ‘cosmetic surgery means any [surgical] procedure which is directed at improving the patient’s appearance and does not meaningfully promote the proper function of the body or prevent or treat illness or disease.” Without the inferred “surgical”, the set of procedures constituting “cosmetic surgery” would seem to encompass every procedure (surgical or not) doing nothing other than improving the patient’s appearance, apparently leaving “other similar procedures” an empty set (empty because all procedures directed at improving appearance would already be in the set labeled “cosmetic surgery”). The reference to “disfiguring disease” in subpar. (A) of sec. 213(d)(9) is also clear on its face. That term is the object of the verb “to ameliorate”, which is different from the verb “to treat”. To treat a disease is to seek to cure it; to ameliorate a disfiguring disease is seek to reduce the effects of a disease now gone. For example, consider dermal abrasion to erase scars left by a severe case of adolescent acne. Indeed, H. Conf. Rept. 101-964, at 1032 (1990), 1991 — 2 C.B. 560, 562, which accompanied the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11342(a), 104 Stat. 1388-471 (adding sec. 213(d)(9)), and which postdates the Senate Finance Committee report, describes the Senate amendment adding sec. 213(d)(9) in the exact terms of the statute: The Senate Amendment provides that expenses paid for cosmetic surgery or other similar procedures are not deductible medical expenses, unless the surgery or procedure is necessary to ameliorate a deformity arising from, or directly related to, a congenital abnormality, a personal injury resulting from an accident or trauma, or disfiguring disease. For purposes of this provision, cosmetic surgery is defined as any procedure which is directed at improving the patient’s appearance and does not meaningfully promote the proper function of the body or prevent or treat illness or disease. N.b.: The term “disease” is used twice, in two different contexts, and, as the majority notes, majority op. note 54, there is no reference to “medical necessity”. Judge Foley does not put it that way (i.e., stating what cosmetic surgery is not), but that must be what he means, because he writes: “Thus, if petitioner’s procedures are ‘directed at improving * * * appearance’ and ‘[do] not meaningfully promote the proper function of the body1, they are cosmetic surgery without regard to whether they treat a disease.” Foley op. p. 105. I assume he would concede that a procedure directed at improving appearance that both meaning-folly promotes function and treats a disease is not cosmetic surgery. I assume that Judge Foley would concede that “other similar procedures”, like cosmetic surgery, must be directed at improving appearance. If not, it is difficult to imagine what boundaries Congress had in mind for other “similar” procedures. A Brandéis brief is: A brief, [usually] an appellate brief, that makes use of social and economic studies in addition to legal principles and citations. * * * The brief is named after Supreme Court Justice Louis D. Brandéis, who as an advocate filed the most famous such brief in Muller v. Oregon, 208 U.S. 412 * * * (1908), in which he persuaded the Court to uphold a statute setting a maximum ten-hour workday for women. Black’s Law Dictionary 213 (9th ed. 2009); see Snyder v. Commissioner, 93 T.C. 529, 533-534 (1989).