**Russell S. HESSE, Plaintiff,**

v.

**Stanley R. RESOR, Secretary of the United States Army, Defendant.**

**No. 66 C 331(1).**

United States District Court
E. D. Missouri, E. D.
Dec. 22, 1966.

Joseph A. Lott, Clayton, Mo., for plaintiff.

Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

HARPER, Chief Judge.

The plaintiff, Captain Russell S. Hesse, U. S. Army, brought this action in the nature of mandamus (by way of mandatory injunction) to compel the defendant, Secretary of the Army, Stanley R. Resor, to accept the plaintiff's Unqualified Resignation from the U. S. Army tendered on June 8, 1966, to be effective August 15, 1966, and to issue an honorable discharge to the plaintiff. The Secretary of the Army advised the plaintiff that his resignation would not be accepted at this time. The suit was timely filed and jurisdiction of this court exists under 28 U.S.C.A. § 1361.

The issue was submitted to the court on oral testimony, exhibits, affidavits, oral stipulations of fact, and the final briefs of the parties. The defendant's brief was originally submitted in support of a motion for summary judgment which was denied, since it was filed too late to be considered by the court under the rules before the date the case was set for trial on the merits.

The facts in this case are for the most part undisputed. The plaintiff is a captain in the regular army. He received a reserve commission on June 1, 1957, and on June 9, 1959, received his commission as a second lieutenant in the regular army. The plaintiff served in the Infantry Branch of the army until August 10, 1961, at which time he was transferred to the Adjutant General Corps in Ft. Bragg, North Carolina, where he remained until June, 1962. The plaintiff is still serving in the Adjutant General Corps.

From August, 1962, until April, 1964, the plaintiff was stationed in Alaska. During this tour of duty the plaintiff was subjected to a criminal investigation from which no charges were ever

brought. Following this investigation, the plaintiff received two "unfavorable" efficiency reports, one of which has since been removed. The plaintiff asserts that the unfavorable reports are the result of the criminal investigation.

In April, 1964, the plaintiff was assigned to his present tour of duty in St. Louis, at the United States Army Administration Center. During his present tour of duty the plaintiff has been non-selected by the promotion board for promotion to the rank of major.

As a result of the above facts, the plaintiff became disenchanted with his prospects as a military officer, found civilian employment, and tendered an unqualified resignation on June 8, 1966, to take effect on August 15, 1966. On June 13, 1966, the plaintiff received orders assigning him to the 25Th Infantry Division in Viet Nam, and he is scheduled to report for duty upon this assignment on December 28, 1966.

On June 29, 1966, the Adjutant General, acting for the Secretary of the Army, advised the plaintiff that his resignation had been disapproved, that he would be retained until December, 1967, and that his situation would be reviewed not later than June 30, 1967, to determine if his retention period should be shortened. Thereafter, on September 20, 1966, the plaintiff commenced the present action.

At the time of the plaintiff's Unqualified Resignation, the Army Regulation governing the submission and acceptance of such resignations was AR635–120, dated May 21, 1962, set forth in part, to-wit:

"15. *Right to Resign.* The right of an officer to resign his office at pleasure is subject to certain restrictions growing out of his military status, as stated herein.

\*　　\*　　\*　　\*　　\*

"17. *Acceptance by Headquarters, Department of the Army.* Headquarters, Department of the Army may properly refuse to accept a resignation when

"a. \* \* \*

"b. War is in progress, is imminent, during periods of increased readiness, or a period of emergency has been declared by the President or Congress.

\*　　\*　　\*　　\*　　\*　　\*

"22. *Exceptions.* Exceptions may be granted in cases of extreme compassionate circumstances, or when such action is deemed in Headquarters, Department of the Army, to be in the best overall interest of both the officer and the Army."

Pursuant to AR635–120, on September 24, 1965, the Secretary of the Army issued the following policy directive, announcing a "selective retention program", set forth in part, to-wit:

"1. Current requirements to increase the strength of the active Army necessitate that the Department of the Army exercise a selective retention program of individuals, particularly officers in the grades of lieutenant, captain, and major. The policies set forth herein are effective upon receipt."

\*　　\*　　\*　　\*　　\*　　\*

"4. All applications for resignation or requests for relief from active duty will be forwarded to DA, TAG, ATTN: AGPO, for final determination."

More specific guidelines for determining which officers should be retained were contained in DA message 763259 issued May 4, 1966, set forth in part to-wit:

"2. A determination whether involuntary retention in the service of officers (which includes warrant officers) is warranted under cited references made by the Department of the Army in consonance with the following DoD policy:

"a. An officer's application for voluntary retirement, unqualified resignation or request for relief from active duty may be denied only after the qualifications of the officer concerned are carefully weighed against the needs of the Army and it is determined that there is an overriding military need for

**34**

the officer's services which cannot otherwise be met.

"b. The policy expressed in the preceding paragraph does not preclude denial of an officer's application for voluntary retirement, unqualified resignation, or request for relief from active duty when the Department of the Army determines that critical shortages exist for officers possessing specific qualifications including skills, specialties, experience, education, and training.

"c. Each officer's application for voluntary retirement, unqualified resignation, or request for relief from active duty is carefully and individually reviewed in order to assure that the officer can provide the services needed if he is to be retained involuntarily. Cases involving undue personal or family hardship submitted to DA for final decision are considered on their merit as provided for in paragraph 8 of cited reference.

"3. The maximum period of involuntary retention will vary from officer to officer depending upon the duration of the critical shortage of officers possessing the qualifications for which they are retained. However, involuntary retention will be for a period no longer than 18 months and may be for a shorter length of time when it is anticipated the shortage will be alleviated in less than 18 months.

"4. Critical shortage of officers exists primarily in the grade of major, captain, and lieutenant. Officers in other grades, however, may be retained involuntarily under the policies set forth above."

■ The plaintiff admits that AR635–120 is to be accorded full recognition as statutory law, but contends that the failure of the defendant to accept the plaintiff's Unqualified Resignation is inconsistent with the law. This contention is without merit. Section 17(b) of AR 635–120 clearly states that in *periods of increased readiness,* an officer's resignation may be refused. This court can and does take judicial notice of the fact that the United States was on September 24, 1965, and is now faced with a period of increased readiness due to the conflict in Viet Nam. The head of each department is authorized to prescribe regulations not inconsistent with the law, for the government of his department (5 U.S.C.A. § 22) and Congress has provided that the Secretary of the Army is the head of the Department of the Army (10 U.S.C.A. § 3012). The "selective retention program" was not and is not inconsistent with existing law, and in fact, did no more than to implement existing law. The "selective retention program" was in no way discrimnatory in and of itself because the standards set forth therein have equal application to each and every officer of the Army. The mere fact that the plaintiff's Unqualified Resignation was not accepted while during the same period other officers' Unqualified Resignations were accepted does not entitle the plaintiff to any relief unless perhaps he can show that the standards of the "selective retention program" were discriminatorily applied against him. Plaintiff has failed to produce even a scintilla of admissible evidence that would tend to prove that the standards of the program were not applied to all officers, including himself, on an equal basis. The testimony disclosed that in the approximate period of the last twelve months forty-six Adjutant General Corps officers of the grade of major or below submitted unqualified resignations. Of these only seven were accepted and of these, six were based on extreme compassionate circumstances and one on the basis of his personal conduct.

■ The plaintiff further contends that the failure of the defendant to accept his resignation is in violation of his constitutional rights as guaranteed by the 5th and 13th amendments of the United States Constitution. The contention is meritless; neither amendment has any application to this situation.

■ The 13th amendment right to freedom from involuntary servitude does not apply to military service. Butler v.

Perry, 240 U.S. 328, 36 S.Ct. 258, 60 L.Ed. 672, and Arver v. United States, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349.

The plaintiff contends that his 5th amendment right to life and liberty which may not be taken without due process was violated because he was not provided a hearing before the denial of his Unqualified Resignation. The plaintiff cites no authority in support of the contention.

Even assuming arguendo that the plaintiff was entitled to a hearing in this situation, there is no showing that he requested such.

The court hereby finds that the plaintiff is not entitled to the relief sought.

This memorandum opinion together with the agreed stipulations of fact is adopted by the court as its findings of fact, and the memorandum opinion is adopted as its conclusions of law. The clerk will enter judgment for the defendant as set out above.