UNITED STATES of America,

v.

James ST. CLAIR, Defendant.

No. 68 Cr. 281.

United States District Court
S. D. New York.

Aug. 2, 1968.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for the United States; John R. Robinson, Asst. U. S. Atty., of counsel.

Lubell & Lubell, New York City, for defendant; Stephen L. Fine, New York City, of counsel.

## OPINION

BONSAL, District Judge.

On March 28, 1968, defendant James St. Clair was charged in a three-count Grand Jury indictment with violating the Military Selective Service Act of 1967 (formerly the Universal Military Training and Service Act, as amended), 50 U.S.C. App. § 451 et seq. (the Act). The three counts of the indictment charge that defendant failed and refused (1) to submit to registration, (2) to have his Registration Certificate in his possession at all times, and (3) to complete the questionnaire which had been mailed to him by his Selective Service Local Board.

Defendant moves, pursuant to Rule 12 (b) (4), F.R.Crim.P., for a jury hearing on the facts necessary to show that the draft system established under the Act is unnecessary and therefore unconstitutional. Defendant further moves to dismiss the indictment on the grounds that:

1) the Act is unconstitutional in that it subjects defendant to involuntary servitude in violation of his rights under the Thirteenth Amendment;

2) the Act is unconstitutional in that it makes an invidious discrimination on the basis of sex in violation of the defendant's right under the Fifth Amendment to due process of law; and

3) United States participation in the war in Vietnam violates international and domestic law.

## MOTION FOR A JURY HEARING

■ Defendant contends that the evidence he would offer at a jury hearing would establish that the draft is unnecessary since it could be replaced by an all-volunteer military force, and that, being unnecessary, the draft constitutes an unconstitutional infringement upon defendant's personal liberties. In his brief, defendant refers to the testimony of the Assistant Secretary of Defense at hearings in June 1966 before the House Committee on Armed Services. The Assistant Secretary described a study of the draft made by the Department of Defense, in which a major objective was to assess the possibility of meeting military manpower requirements on a voluntary basis. While this study indicated that an all-volunteer army was "theoretically possible," the Assistant Secretary testified that "other changes and techniques do not appear collectively to be able to meet the deficit anticipated under an all-volunteer force." (Committee on Armed Services, House of Representatives, 89th Congress, 2d Session, June 22–24, 28–30, 1966, pp. 9923, 9938–40.) Congress did not establish an all-volunteer force and—

'The power of Congress to classify and conscript manpower for military service is 'beyond question.' Lichter v. United States, supra, 334 U.S. [742,] at 756, 68 S.Ct. [1294,] 1302, 92 L.Ed. 1694 [1948]; Selective Draft Law Cases, supra [245 U.S. 366] [1918]. Pursuant to this power, Congress may establish a system of registration for individuals liable for training and service, and may require such individuals within reason to cooperate in the registration system." United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (May 27, 1968).

The authority of Congress arises from the Constitution, which empowers it "to raise and support Armies * * * to provide and maintain a Navy," (Article I, Section 8, Clauses 12 and 13), and the courts may not review Congress's determination as to how its power shall be

exercised. Bertelsen v. Cooney, 213 F.2d 275 (5th Cir.), cert. denied, 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 674 (1954); cf. Korte v. United States, 260 F.2d 633 (9th Cir. 1958), cert. denied, 358 U.S. 928, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959); Clark v. United States, 236 F.2d 13 (9th Cir.), cert. denied, 352 U.S. 882, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956).

■ Whether or not there is a better alternative to the draft which might render it unnecessary is a matter for determination by the Congress. This court does not have power to "conclude that there was a better method of providing for the needed national defense than the one chosen by the national legislature * * * [and] to conclude that the availability of this better way rendered unnecessary and *therefore unconstitutional,* the method chosen by Congress." United States v. Butler, 389 F.2d 172, 176 (6th Cir.), cert. denied, 390 U.S. 1039, 88 S.Ct. 1636, 20 L.Ed.2d 300 (April 29, 1968).

For these reasons, defendant is not entitled to a jury hearing.

## MOTION TO DISMISS THE INDICT-MENT

### *Violation of Thirteenth Amendment* (Prohibiting Involuntary Servitude)

■ Defendant contends that the Act subjects him to involuntary servitude in violation of his rights under the Thirteenth Amendment, which provides in Section 1, "Neither slavery nor involuntary servitude, except as a punishment for crime * * * shall exist within the United States, or any place subject to their jurisdiction." However, the Thirteenth Amendment does not restrict the power of Congress to raise and support armies under *Article I, Section 8* of the Constitution. See Hesse v. Resor, 266 F. Supp. 31 (E.D.Mo.1966); Baldauf v. Nitze, 261 F.Supp. 167 (S.D.Cal.1966); United States v. Smith, 124 F.Supp. 406 (E.D.Ill.1954), aff'd sub nom. United States v. Hoepker, 223 F.2d 921 (7th Cir.), cert. denied, 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750 (1955); United States v. Tomlinson, 94 F.Supp. 854 (E.D.Pa.

1950.) As pointed out in Baldauf v. Nitze, supra, 261 F.Supp. at 173:

> "[I]nvoluntary servitude has never been construed as pertaining to the military service. That term in the Thirteenth Amendment includes only those forms of labor such as peonage."

See also, Cox v. Wood, 247 U.S. 3, 38 S. Ct. 421, 62 L.Ed. 947 (1918); Selective Draft Law Cases, 245 U.S. 366 (1918); United States v. Brooks, 54 F.Supp. 995 (S.D.N.Y.1944), aff'd, 147 F.2d 134 (2d Cir.), cert. denied, 324 U.S. 878, 65 S.Ct. 1027, 89 L.Ed. 1430 (1945). Accordingly, Congress may provide for the draft for the national defense whether or not it has declared war. See United States v. Hogans, 369 F.2d 359 (2d Cir. 1966); Etcheverry v. United States, 320 F.2d 873 (9th Cir.), cert. denied, 375 U.S. 930, 84 S.Ct. 331, 11 L.Ed.2d 263 (1963); United States v. Henderson, 180 F.2d 711 (7th Cir.), cert. denied, 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372 (1950); United States v. Lambert, 123 F.2d 395 (3d Cir. 1941); United States v. Herling, 120 F.2d 236 (2d Cir. 1941).

### *Violation of Due Process*

■ Defendant contends that the Act makes an invidious discrimination based upon sex in violation of his right to due process of law under the Fifth Amendment. Defendant argues that men are denied equal protection of the laws in being compelled to serve in the Armed Forces when women are not so compelled. See Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Defendant points out that Congress has established women's corps in the various branches of the Armed Forces and therefore urges that Congress has treated the sexes equally with respect to their ability to serve in the Armed Forces.

In the Act and its predecessors, Congress made a legislative judgment that men should be subject to involuntary induction but that women, presumably because they are "still regarded as the center of home and family life" (Hoyt v. State of Florida, 368 U.S. 57, 62, 82 S. Ct. 159, 162, 7 L.Ed.2d 118 (1961)),

should not. Women may constitutionally be afforded "special recognition" (cf. Gruenwald v. Gardner, 390 F.2d 591, 592 (2d Cir. 1968)), particularly since women are not excluded from service in the Armed Forces. Compare Hoyt v. State of Florida, supra, with White v. Crook, 251 F.Supp. 401 (M.D.Ala.1966).

In providing for involuntary service for men and voluntary service for women, Congress followed the teachings of history that if a nation is to survive, men must provide the first line of defense while women keep the home fires burning. Moreover, Congress recognized that in modern times there are certain duties in the Armed Forces which may be performed by women volunteers. For these reasons, the distinction between men and women with respect to service in the Armed Forces is not arbitrary, unreasonable or capricious. See generally Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

*Illegality of the war in Vietnam*

Finally, the defendant moves to dismiss the indictment on the grounds that United States participation in the war in Vietnam violates domestic and international law.

■ While the legality of the war in Vietnam under domestic and international law has been considered from a variety of viewpoints (see, e. g., Note, Congress, The President, and the Power to Commit Forces to Combat, 81 Harv.L.Rev. 1771 (1968); Wright, Legal Aspects of the Viet-Nam Situation, 60 Am.J.Int'l L. 750 (1966); Symposium—Legality of United States Participation in the Viet Nam Conflict, 75 Yale L.J. 1084 (1966)), the contention that the war is illegal is not a defense to a prosecution for violating the Act. United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966), cert. denied, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132 (1967). "The courts will not examine the purposes for which the executive employs the armed forces in foreign military opera-

tions" (United States v. Hogans, 369 F.2d 359, 360 (2d Cir. 1966); United States v. Bolton, 192 F.2d 805 (2d Cir. 1951)), and it is immaterial that those purposes may be unpopular in many quarters.

Defendant's motion for a jury hearing and to dismiss the indictment is denied.

It is so ordered.