UNITED STATES of America

v.

Carmen Stephen COOK.

Crim. No. 69-104.

United States District Court,
W. D. Pennsylvania.

March 31, 1970.

Richard L. Thornburgh, U. S. Atty.,
Thomas A. Daley, Asst. U. S. Atty.,
Pittsburgh, Pa., for plaintiff.

Stanton D. Levenson, Pittsburgh, Pa.,
for defendant.

## OPINION

ROSENBERG, District Judge.

The motion of the defendant, Carmen Stephen Cook, is here before me seeking the dismissal of the indictment which charges him with failure to report for and submit to induction in violation of § 12(a) of the Military Selective Service Act (the Act), 50 U.S.C.App. § 462(a).[1]

The indictment charges that on or about August 26, 1968, the defendant, a registrant with Local Board No. 87 at New Castle, Pennsylvania, did wilfully and knowingly fail to report for and submit to induction into the armed forces of the United States. Counsel for the defendant and the Assistant United States Attorney stipulated that the issues in this case be submitted to the Court on briefs and the right to present oral arguments be waived.

The defendant raises two arguments in support of his motion: First, that the Ninth Amendment to the Constitution guarantees his right to his own life; and second, that the induction statute is unconstitutional in that it lacks uniformity because it provides for the induction of a limited age group of males and does not provide for the induction of women into the Armed Services on the same basis as it provides for induction of men into the Services.

It is provided in the Ninth Amendment that, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

■ The defendant asserts that the "right to ones own life" is the most fundamental of all rights guaranteed by

---

1. 50 U.S.C.App. § 462(a) provides in part: " * * * any person who * * * evades or refuses registration or service in the armed forces * * * or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title * * * or rules, regulations, or directions made pursuant to this title * * * shall, upon conviction * * * be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *."

this amendment. Our courts have had little occasion to interpret the provisions of this amendment. See Bennett B. Patterson (1955), The Forgotten Ninth Amendment. However, in his concurring opinion in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), Mr. Justice Goldberg focused considerable attention on the provisions of this amendment and concluded that " * * * as the Ninth Amendment expressly recognizes, there are fundamental personal rights * * * which are protected from abridgment by the Government though not specifically mentioned in the Constitution." 381 U.S. at 496, 85 S.Ct. at 1688. The purpose of the Ninth Amendment is therefore to guarantee to individuals those rights inherent to citizenship in a democracy which are not specifically enumerated in the Bill of Rights.

However, the people granted to Congress many powers which permit it to abridge the rights of individuals.

"To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed or denied so that the morale of the people and the spirit of the army may not be broken by seditious utterances; freedom of the press curtailed to preserve our military plans and movements from the knowledge of the enemy; deserters and spies put to death without indictment or trial by jury; ships and supplies requisitioned; property of alien enemies, theretofore under the protection of the Constitution, seized without process and converted to the public use without compensation and without due process of law in the ordinary sense of that term; prices of food and other necessities of life fixed or regulated; railways taken over and operated by the government; and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war." United States v. Macintosh, 283 U.S. 605, 622, 51 S. Ct. 570, 574, 75 L.Ed. 1302 (1931).

There does exist,

" * * * a sphere within which the individual may assert the supremacy of his own will, and rightfully dispute the authority of any human government,—especially of any free government existing under a written constitution, to interfere with the exercise of that will. But it is equally true that in every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." Jacobson v. Massachusetts, 197 U.S. 11, 29, 25 S. Ct. 358, 362, 49 L.Ed. 643 (1905).

While the right to live and work is recognized, an individual " * * * may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country, and risk the chance of being shot down in its defense." 197 U.S. at 29, 25 S.Ct. at 362.

■ Although Congress may impose many limitations upon individual liberties in the just exercise of its "war power", this power is not without limitation. United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967). However, these limitations do not include a prohibition upon the right of Congress to create military forces through a conscriptive system. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), rehearing denied 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); United States v. Robel, supra; Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3 (1942).

■ For these reasons, the contention of the defendant that the Act violates

his rights as guaranteed by the Ninth Amendment, is without merit.

██ The second ground for dismissal of the indictment upon which the defendant relies is that the Military Service Act of 1967 is unconstitutional because it deprives the defendant of his liberty without "equal protection of the law." The concept of "equal protection" has its origin in the Fourteenth Amendment,[2] and is not applicable to the federal government. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Simpson v. United States, 342 F.2d 643, C.A.7, 1965. For this reason the defendant's claim will be treated as one alleging a violation of the due process provisions of the Fifth Amendment.

In raising his objections, the defendant takes particular exception to those sections of the Act which define the segment of the population subject to the provisions of the Act,[3] and alleges that these provisions violate the Constitutional guarantees that all individuals be treated alike.

The defendant asserts that the Act discriminates against those males whose ages are within the prescribed age limitations and in favor of those individuals not included in this category, and he further contends that the Act is discriminatory in that it is applicable only to males and thereby excludes females from compulsory military service.

██ Presumably the everyday contacts of men and women socially, commercially and governmentally are based upon reason and reasonableness. The law may be defined as the "rule of reason applied to existing conditions * * *." 52A C.J.S. p. 739. Its very foundation rests upon the reasonableness of men and women in their activities, and it is presumed that all legislation is reasonable and no absurd intention will be ascribed to Congress. For without this presumption, no government, commerce or society could exist.

Congress has chosen, as it had a right to do, the age limits for compelled military service. If it did not have the authority to impose age limitations, the ludicrous situation of inducting infants or aged and feeble individuals might result and a nation defended by these would be tantamount to a nation left unprotected.[4]

The Court in United States v. St. Clair, 291 F.Supp. 122 (S.D.1968) considered the question regarding sex discrimination within the provisions of the Act, and held that:

"In the Act and its predecessors, Congress made a legislative judgment that men should be subject to involuntary induction but that women, presumably because they are 'still regarded as the center of home and family life' * * * should not. Women may constitutionally be afforded 'special recognition' (cf. Gruenwald v.

2. The relevant portions of the Fourteenth Amendment provide: " * * * no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

3. The relevant part of 50 U.S.C.App. § 454 provides: "Except as otherwise provided in this title * * * every male citizen of the United States and every male alien admitted for permanent residence, who is between the ages of 18 years and 6 months and 26 years, at the time fixed for his registration, or who

attains the age of 18 years and 6 months after having been required to register pursuant to section 3 of this title * * * or who is otherwise liable as provided in section 6(h) of this title * * * shall be liable for training and service in the Armed Forces of the United States * * *."

4. It may be that if the petitioner's philosophy were adopted we would witness the abolition of all armies. If the Government could be persuaded to adopt this philosophy, his premises would be fundamental. However, world circumstances are far from ideal in this respect, and the Government must prepare for national defense in the most functionally satisfactory manner possible.

**622**

Gardner, 390 F.2d 591, 592 (2d Cir. 1968), particularly since women are not excluded from service in the Armed Forces." 291 F.Supp., at 124–125.

"In providing for involuntary service for men and voluntary service for women, Congress followed the teachings of history that if a nation is to survive, men must provide the first line of defense while women keep the home fires burning. Moreover, Congress recognized that in modern times there are certain duties in the Armed Forces which may be performed by women volunteers. For these reasons, the distinction between men and women with respect to service in the Armed Forces is not arbitrary, unreasonable or capricious." United States v. St. Clair, supra, at page 125. See also, Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

If the contention of the defendant is that there is no valid basis to differentiate between men and women because modern times have legislated for the equality of the rights of all people without regard to sex, and if modern thinking is to equalize the status of men and women in every respect possible, including styles of clothing and headdress, this would not itself remove the physical characteristics which differentiate the sexes. As they are born so they are created and no amount of legislation or "modernization" will change their distinguishing and distinctive physical characteristics. While each of the sexes has its own innate characteristics, for the most part physical strength is a male characteristic, and so long as this is so, the United States will be compelled to establish and maintain armed forces of males which may at least physically be equal to the armed forces of other nations, likewise composed of males, with which it must compete.

The power of Congress to promulgate a selective service system does not arise from the existence of a war or a national emergency, but rather from the power granted to Congress in Article I, Section 8 of the Constitution "to raise and support Armies * * * to provide and maintain a Navy." United States v. Hogans, 369 F.2d 359, C.A.2, 1966. Inherent in this power to raise and maintain armed forces is the power, vested in Congress, to determine who shall be required to serve in these forces, and in what way such a person's service requirements shall be fulfilled. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931).

It is therefore obvious that in the exercise of its power to raise and maintain armed forces, Congress has the implicit power to determine the criteria by which those are designated and called to the service of their country. For this reason, the contention of the defendant that the Act violates his Constitutional rights under the Fifth Amendment is likewise without merit, and the defendant's Motion to Dismiss the Indictment, is therefore denied.