Arthur **BASTARDO** et al., Plaintiffs,

v.

Robert **WARREN** et al., Defendants.

No. 69–C–143.

United States District Court,
W. D. Wisconsin.

Oct. 7, 1971.

---

David Loeffler, Milwaukee, Wis., Frederick Sherman, Madison, Wis., for plaintiffs.

Gordon Samuelsen, Asst. Atty. Gen., Madison, Wis., for defendants.

JAMES E. DOYLE, District Judge.

Plaintiffs, adult male laborers, contend that the equal protection clause of the Fourteenth Amendment to the United States Constitution is violated by Section 104.02, Wisconsin Statutes, which provides:

> "Every wage paid or agreed to be paid by an employer to any woman or minor employe, except as otherwise provided in section 104.07, shall be no less than a living-wage."

Briefs have been submitted on these questions:

(1) whether the challenged statute is entitled to a presumption of constitutionality, with an accompanying burden upon the plaintiffs to demonstrate that the legislative judgment has been arbitrary and unreasonable, or is not entitled to

the presumption of validity, with an accompanying burden upon the defendants to show a compelling state interest which supports the legislative judgment; and

(2) whether an evidentiary hearing will be required to permit the court to decide question (1).

In previous orders, I have decided that if plaintiffs ultimately prevail in their contention, they will be entitled to a declaratory judgment, but not to the injunctive relief prayed for in their complaint.

It is the contention of the plaintiffs that a "strict" or "active" standard of review is appropriate, whereby the burden is on the state to demonstrate a compelling justification for the statute in question.

▮ Plaintiffs contend, in part, that the right to a minimum wage is a "fundamental interest"; that if the state elects to extend such benefits and protections, it must do so even-handedly; and that any denials of such interest to particular classes of persons must withstand strict scrutiny by the court. Cf. Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1970, 26 L.Ed.2d 523 (1970) (voting); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) (voting); Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (voting); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel); Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (voting); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (familial relations); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (marriage); Harper v. Virginia State Board of Elections, 383 U.S. 663, 667, 88 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (voting); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L. Ed.2d 510 (1965) (privacy of marital relation); Sherbert v. Verner, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (religious freedom); Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (freedom of association); N.A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 463–466, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (freedom of association); Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (education); Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (race); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation).

The Supreme Court of the United States has recently laid to rest this contention. The Court stated in Dandridge v. Williams, 397 U.S. 471, 485–486, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' * * * 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'

* * *

"To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the drastically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. * * * [I]t is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the states their views of wise economic or social policy." (citations omitted).

I conclude without the necessity for an evidentiary hearing, that public welfare assistance programs and minimum wage regulations are comparable, for this purpose, and that the right to a minimum wage is not so "fundamental" as to require application of the "strict" standard.

■ Plaintiffs also contend, however, that a classification based upon sex is "suspect" because of its history of misuse against a class as a whole without regard to characteristics of individual members of the class. The contention is similar to that which the Supreme Court has accepted where classifications are made on the basis of race. *See e.g.,* Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 85 S. Ct. 283, 13 L.Ed.2d 222 (1964). If both racial and sexual classifications are "suspect", then in both situations, plaintiffs contend, the state must show a compelling state interest to justify the existence and enforcement of the classification.

There is judicial precedent supporting the constitutionality of sexual classification for certain purposes, particularly "benign" purposes.[1] The question is whether these precedents are immune to re-examination, and whether plaintiffs are to be denied an opportunity to demonstrate that times and social attitudes have changed radically and that a philosophy and a set of assumptions which evoked earlier judicial approval of sexual classifications are no longer constitutionally valid.

I believe these judicial precedents are not immune to re-examination.

The question therefore becomes: should every legislative and administrative classification on the basis of sex suffer the same initial suspicion in constitutional terms suffered by every classification on the basis of race?

If so, the court should turn first to the state to justify the classification embodied in the particular statute or regulation under attack. This means that the burden of going forward with the proof rests upon the state. It means that the burden of persuasion rests upon the state. And it means that persuasion requires a showing of a compelling state interest in making and giving effect to the racial or sexual classification in the specific subject matter context of the statute or regulation. It may be that when the particular racial or sexual classification is "benign", that is, when its purpose and effect is to redress oppression or disadvantage previously suffered by a certain racial or sexual group in a certain context such as employment or housing or educational opportunity, then the compelling state interest may be more easily demonstrable than it may be when the classification is not benign.

On the other hand, if every legislative and administrative classification on the basis of sex is not to suffer the same initial suspicion, in constitutional terms, that is suffered by every classification on the basis of race, then the court should turn first to the party attacking the particular statutory or regulatory classification. The burden of going forward with proof rests with the attacker. The burden of persuasion rests with the attacker. Persuasion requires a showing that in the specific subject matter context of the statute or regulation, the sexual classification is arbitrary or unreasonable. It may be that when the particular sexual classification is benign, then arbitrariness or unreasonableness is more difficult to demonstrate than it

---

1. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 394–395, 57 S.Ct. 578, 81 L.Ed. 2d 703 (1939); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); Goesaert v. Cleary, 335 U.S. 464, 466, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Muller v. Oregon, 208 U.S. 412, 421, 28 S.Ct. 324, 52 L.Ed. 551 (1908); Ward v. Luttrell, 292 F.Supp. 162, 164 (E.D.La.1968); Gruenwald v. Gardner, 390 F.2d 591, 592–593 (2nd Cir. 1968); United States v. St. Clair, 291 F.Supp. 122, 124–125 (S.D.N.Y.1968). *See also* Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1107–1111 (1969).

may be when the classification is not benign.

In this case, we have yet to resolve the threshold question in this chain: whether every legislative and administrative classification on the basis of sex should suffer the same initial suspicion suffered by every classification on the basis of race. It is difficult to determine the manner in which the resolution of this threshold question is to be achieved. It is not clear how it came about that all legislative and administrative distinctions between blacks and whites came to suffer this constitutional suspicion (with its significant litigatory consequences in terms of the allocation and severity of the burden of persuasion). The "suspicion doctrine" may have been a result of the pyramiding of specific cases in which the courts found as fact that racial classifications in this particular context and that particular context were irrational and destructive. Or it may be that the judicial promulgation of the doctrine that every racial classification is initially suspect was simply a judicial *tour de force* giving expression to an adequately ripened awareness on the part of a sufficiently large segment of the national community that, in general terms, classifications on the basis of race are probably irrational and destructive.

When a court is now asked to apply the suspicion doctrine to all sexual classifications, it is not clear whether the plaintiff should be obliged to make a factual showing that, across the board and in many different contexts, sexual classifications are commonly irrational and destructive or whether he need only seek a judicial *tour de force*. I will not presently decide this question. But I do now decide that the plaintiffs here should be given the opportunity, if they desire to avail themselves of it, to make a part of this record a factual showing with respect to the general significance of sexual classifications across the board and in many different contexts, and that the defendants should be given the opportunity to respond.

I emphasize that I view the present question as relating to the significance of sexual classifications broadly and in many contexts. I mean to contrast this with the particular question which appears to be present in this case: namely, the significance and consequences of a classification between adult males and adult females with respect to the coverage of a minimum wage statute. Presumably, inquiry into this more particular and limited question will occur when it is determined whether the state is obliged to show a compelling interest in this particular sexual classification in this particular context, or the plaintiffs are obliged to show the arbitrariness or unreasonableness of this particular classification.

Therefore, it is ordered that a pretrial conference be scheduled promptly by the clerk to determine whether the parties elect to present evidence on the general question stated above, and if so, the manner in which they shall do so.