Andrew **ROWLAND**, a minor by his guardian Lewis Rowland, et al.

v.

Curtis **TARR**, National Director of Selective Service, Henry R. Sherrard, Acting Pennsylvania State Director of Selective Service, Local Board No. 138.

Civ. A. No. 71–1480.

United States District Court,
E. D. Pennsylvania.

April 27, 1972.

Harold E. Kohn, Philadelphia, Pa., for plaintiffs.

Warren D. Mulloy, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

GORBEY, District Judge.

Plaintiffs, both individually and as representatives of a class, request convention of a three-judge district court pursuant to 28 U.S.C. §§ 2282, 2284 to challenge the Military Selective Service Act of 1967 (MSSA).[1] The specific relief sought is a declaratory judgment of unconstitutionality and injunctive relief against enforcement.

Plaintiffs are four male residents of the Eastern District of Pennsylvania, three of whom at the filing time of this action, had not reached their eighteenth birthday. The fourth has registered with the Selective Service System pursuant to the MSSA.

Defendants, through the United States Attorney for the Eastern District of Pennsylvania, have opposed the convention of a three-judge court and have moved to dismiss the complaint.

Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202; 42 U.S.C. §§ 1981, 1983 and 1985 and the U.S. Const. amends. I, V, IX, X and XIII.

As a single district judge faced with an application for a three-judge court, my initial determination is the breadth and depth of my scrutiny. Little guidance can be derived from the statutory language. While the procedure is statutorily defined once the three-judge court is impaneled,[2] far from manifest is the threshold convention determination itself.[3]

We look for direction to the case of Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962) (per curiam), where the single judge's duties are delineated:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the

---

1. On June 30, 1967, Congress extended the Universal Military Training and Service Act, Act of 30 June 1967, Pub.L. No. 90–40 § 1(1), 81 Stat. 100, amending 50 U.S.C.App. § 451(a) (1964) (codified at 50 U.S.C.App. § 451(a) (Supp. IV, 1969)). For the original text of the 1948 Act, see 62 Stat. 604 (1948), for four years. On September 28, 1971, Congress, with certain revisions, extended the draft to July 1, 1973. P.L. 92–129 (H.R. 6531, September 28, 1971). Neither the July 1 to September 28, 1971 hiatus nor the present revisions of the MSSA are presently in issue.

2. 28 U.S.C. § 2284.

3. 28 U.S.C. § 2282. Injunction against enforcement of federal statutes; three-judge court required.

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

The Third Circuit has recently remarked:

"[T]he decision to convene a three-judge court and the delineation of issues to be submitted to it are abstruse matters frequently admitting of little procedural precision." Spencer v. Kugler, 454 F.2d 839 (3d Cir. 1972). See also Currie, The Three-judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. (1964).

case presented otherwise comes within the requirements of the three-judge statute." [4]

We must, of course, begin any inquiry of threshold determinations with the issue of jurisdiction. Article III, the judiciary article of the Constitution, enumerates the cases and controversies embraced within the judicial power of the United States. We therefore examine the suit before us in accordance with the potential for federal jurisdiction found in article III.

■ It should be recognized that unconstitutional statutes may exist but unless they are embodied in a case properly susceptible of judicial determination, the courts cannot pronounce their unconstitutionality. Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246.

In the 1968 case of Flast v. Cohen, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–1950, 20 L.Ed.2d 947, Chief Justice Warren elaborated on justiciability:

"Embodied in the words 'cases' and 'controversies' are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine."

In Baker v. Carr, 369 U.S. 186, 210–211, 82 S.Ct. 691, 7 L.Ed.2d 663, the most recent definitive pronouncement of the political question doctrine, Justice Brennan writing for the majority maintained that the political question doctrine should be considered as a function of the federal separation of powers. *Baker* sets out certain elements for consideration:

"Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Id.* at 217, 82 S.Ct. at 710.

We hold that at least "one of these formulations is inextricable from the case at bar" and therefore dismissal for nonjudiciability is necessary. *Id.* at 217, 82 S.Ct. at 710.

■ The Constitution empowers Congress to declare war, raise and support military forces, and make rules for their governance.[5] That body is further entrusted with the power to make all laws necessary and proper for carrying into execution powers vested in other departments.[6] Vested in Congress as a corollary of these powers is the power to promulgate a selective service system. To be sure, inherent in the power to raise and maintain armed forces is the power to determine who shall be required to serve in these forces, and in what way such a person's service requirements

---

4. Our Circuit in the recent case of Majuri v. United States, 431 F.2d 469, 472–473 (3d Cir. 1970) has made clear that the first two inquiries both involve judicial functions requiring investigation into the substantive allegations. See generally, American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, 253, (Tent.Draft No. 6, 1968). See also Currie, *supra*, at 20–29.

5. Article I, § 8 cl. 11, 12, 14.

6. Article I, § 8 cl. 18.

shall be fulfilled. Adoption of a better, different or more equitable system than the present one is also for the consideration of Congress.[7]

Despite plaintiffs' assertion that they do not question Congressional power to raise an army by conscription, a fair reading of the complaint and the allegations contained therein indicates a frontal attack on the draft itself. What is sought is a declaration of unconstitutionality as to the MSSA in toto; there is no intention to isolate only specific sections as constitutionally impermissible, leaving unchallenged other sections.

■ Yet, in the exercise of the court's constitutionally warranted power under Article III, it cannot be categorically stated that all matters relating to conscription are immune from judicial scrutiny. *cf.* National Student Association v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103 (1969).

The judicial function displayed so flexibly and creatively in the areas of reapportionment[8] and desegregation[9] would, in this court's judgment, if extended to the issue of raising a military force, transcend the traditional dispute resolving responsibility. Judicial deference to the political department which has prime responsibility for perpetuating constitutionally prescribed powers is only a realistic recognition of the functional limitations of the judicial process.[10]

Not without crucial significance to our determination is the compelling array of precedent upholding the constitutionality of Congressional conscription. The Federal Enrollment Act of 3 Mar. 1863, ch. 75, 12 Stat. 731, was upheld in Kneedler v. Lane, 45 Pa. 238, 295 (1863). The Confederate Conscription Act of 16

Apr. 1862 (Const.Stats. CSA, 1st Cong., 1st Sess., ch. 31 (1862) was upheld in numerous decisions, including Barber v. Irwin, 34 Ga. 27 (1864); Jeffers v. Fair, 33 Ga. 347 (1862); Simmons v. Miller, 40 Misc. 19 (1864); Ex parte Coupland, 26 Tex. 386 (1862); Burroughs v. Peyton, 57 Va. (16 Gratt.) 470 (1864). The Selective Service Act of 1917[11] was upheld in Selective Draft Law Cases (Arver v. United States) 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918). The constitutionality of subsequent Selective Service Acts up to and including the MSSA has been uniformly sustained. United States v. Bethlehem Steel Corporation, 315 U.S. 289, 62 S.Ct. 581, 86 L. Ed. 855 (1941); Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3 (1942); Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) rehearing den. 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953); Warren v. United States, 177 F.2d 596 (10th Cir. 1949) cert. den., 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584 (1950); George v. United States, 196 F.2d 445 (9th Cir. 1952) cert. den., 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952); Richter v. United States, 181 F.2d 591 (9th Cir. 1950) cert. den., 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647 (1950); United States v. Henderson, 180 F.2d 711 (7th Cir. 1950), cert. den., 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372 (1950); United States v. Kime, 188 F.2d 677 (7th Cir. 1951); Etcheverry v. United States, 320 F.2d 873 (9th Cir. 1963); United States v. Hogans, 369 F.2d 359 (2nd Cir. 1966); United States v. Butler, 389 F.2d 172

7. See, The Report of the President's Commission on an All-Volunteer Armed Force (The Gates Commission); and Hearings on the Extension of the Draft and Bills Related to the Voluntary Force Concept and Authorization of Strength Levels, Before the Committee on Armed Services, House of Representatives, 92nd Congress, 1st Sess. (1971).

8. Baker v. Carr, *supra*.

9. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (Brown I); 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (Brown II).

10. See Scharpf, Judicial Review and the Political Question: A Functional Analysis, 75 Yale L.J. 517 (1966).

11. Ch. 15, 40 Stat. 76 (1917).

(6th Cir. 1968); United States v. Boardman (1st Cir. 1969) 419 F.2d 110, cert. den., 397 U.S. 991, 90 S.Ct. 1124, 25 L. Ed.2d 398; United States v. St. Clair, 291 F.Supp. 122 (S.D.N.Y.1968); United States v. Crocker (D.C.Minn.1970) 308 F.Supp. 998, aff'd 8 Cir., 435 F.2d 601; United States v. Cook (W.D.Pa.1970) 311 F.Supp. 618.

■ Concluding that there is an absence of jurisdiction, we are compelled to deny plaintiffs' application for a three-judge court and grant the Government's cross-motion to dismiss the complaint.

Order entered accordingly.